## CITY OF VICTORIA v. VICTORIA COUNTY.

### No. 2019. Decided May 11, June 23, 1910.

**1.—Case Approved.**

The rulings in this case upon former appeal (City of Victoria v. Victoria County, 100 Texas, 438) approved, explained and followed, holding the evidence here considered, which is summarized, insufficient to show a dedication by the city to the county of the entire public square on which the public buildings of both were erected. (Pp. 482, 483.)

**2.—Public Square—Dedication—Estoppel — City — County — Joint Use — Case Stated.**

A city, owner of a public square within its limits and charged by legislation with the duty of erecting public buildings for the county and the power to use the square as a site thereof, permitted and partly paid for the construction of a courthouse, a clerk's office and a jail, all located on the south half of such square. A conflict arising over the respective claims of the city and the county to use and control the courthouse was adjusted by assigning the clerk's office to the use of the city and the courthouse to the county, but no deeds were executed. This or other buildings later erected by the city upon the square

were occupied and controlled by it in the assertion of right thereto until ousted from possession by the county, when it sued to recover the premises. Held;

(1)    That no intention to dedicate to the county the entire square, or more at the most than the south half of it, was evidenced by these facts nor by the fact that the premises were designated on city maps or in the proceedings of the council as "courthouse" square, or that the whole square was fenced by the county.    (Pp. 484, 485.)

(2)    That the power of the city to make a dedication to the county was exhausted by the first exercise and was irrevocable and the dedication could not be changed, though its original extent could be explained, by the subsequent conduct of the parties with reference to the property.    (Pp. 485, 486.)

(3)    That the burden was on the city to show the dedication and its extent. (P. 486.)

(4)    That the dedication was not necessarily limited to the ground on which the buildings stood and ways for passage between them but the evidence rather indicated an intention to dedicate a part of the square, which would include in one tract all the county buildings, taken in such regular form as their location naturally suggested, which, it seems, would indicate the south half of the square.    (P. 487.)

(5)    That such dedication, not being several as to particular pieces of ground occupied by each building, would not be abandoned as to any one part by the county ceasing to use the building standing upon it.    (Pp. 487, 488.)

(6)    That the action of the county in erecting a new jail not on the south half, but on the northwest corner of the square, and of the city in permitting it to do so, could not enlarge the original or constitute a new dedication to the county, but that the city might become estopped thereby from requiring the county to remove or cease to occupy such building.    (Pp. 488–490.)

(7)    That while such estoppel would not prevent the city from claiming title to the soil, it would prevent the court from using its process to unjustly evict the county from property built and occupied under such circumstances. (Pp. 488, 489.)

(8)    That as incident to such right of occupancy of its new jail building the county would be entitled to a way of ingress and egress thereto, but not to maintain cesspools or privies in connection with its jail upon the north half of the block.    (P. 489.)

(9)    That a right acquired by the city to occupy the old county jail on the south half of the square, in consideration of its permitting the erection of the new one by the county on the north half, would be terminated by its voluntary ceasing to occupy same, but not by its voluntary dispossession by the county. (Pp. 488–491.)

(10)    That the judgment awarding to the county a recovery of the entire square, as having been covered by the dedication, should be reversed, and the case remanded with instructions to render judgment in accordance with these rulings, after ascertaining by trial all facts necessary to enable this to be done. (P. 489.)

Error to the Court of Civil Appeals for the Fourth District in an appeal from Victoria County.    Action was brought by the city of Victoria and it obtained writ of error on the affirmance by the Court of Civil Appeals of a judgment in favor of defendant Victoria County.

*J. L. Dupree,* City Attorney, *Dupree & Pool,* and *Samuel B. Dabney,* for plaintiff in error.—The charge of the court and the verdict and judgment following it are in error, and absolutely unsupported in that the evidence in this case conclusively shows, that the town dedicated only a part of the square, has been exercising dominion and control upon a great portion of said square for over fifty-eight years; that in 1850 the town's right was recognized by the county; that the town has had unbroken dominion and control until August, 1904, when it was ousted by the county; and because this square being patented to the town, there was no title shown out of it; and because

such dedications as it had made for a courthouse and jail on the square, under special Acts, had exhausted its powers in that direction, the town reserving a portion of the square and remaining in control when and after such dedications were made, and having no power to divest itself of title by subsequent dedication. City of Victoria v. Victoria County, 100 Texas, 438.

When a dedicated site is abandoned, the title reverts to the dedicator, and the court erred in directing the jury to include in the portion of the square which they should find for the county, or in finding all of the square for the county a jail site, as well as a site for a courthouse and clerk's office, at the same time leaving it open to find a jail site on the front northeast corner of the square, because the Supreme Court had ruled in this case that the dedication for a jail site, made about the year 1840, exhausted the power in that regard, and because such jail site had been abandoned for a long period of years, and the county now occupies a jail site on the front northeast corner of the square, the old jail site being upon the back western part of the square, near Blass Street; and therefore the object of the use of this site has wholly failed, and its use becomes impossible for a jail, if the county be considered to have a right to a jail site, or a different jail in this square, and while this principle might not apply, if the dedication was for a street, or public park, out of consideration of the interests of abutting owners and citizens generally, yet it will apply in the case of a courthouse or jail. In one case there would be relief in equity to abolish purpresture, or compel the right use of the property; in the other, the right use being impossible, or forever abandoned, it reverts. City of Dallas v. Gibbs, 65 S. W., 81; State of Texas v. Travis Co., 85 Texas, 440; 13 Cyclopedia of Law and Procedure, 497; McAlpine v. Railway Co., 68 Kan., 207, 64 L. R. A., 85.

The jail standing upon the northeast corner of the square is a purpresture, or diversion of use, or nuisance, and therefore should be removed, and the city has the right to compel its removal, if it does not recover its site. City of Victoria v. County of Victoria, 101 S. W., 196; City of Llano v. County of Llano, 23 S. W., 1009; County of Llano v. City of Llano, 28 S. W., 926; County of Harris v. Taylor, 58 Texas, 690; Lamar County v. Clements, 49 Texas, 347; 13 Cyc., 502-3, 498, 499.

When property dedicated to a special use is definitely abandoned, and no longer applied to that use, the title by dedication reverts to the dedicator, being of the nature of a base fee, defeasible upon failure to apply to the purpose of the dedication. Such purpose being for public offices, removable by the county, and not for park or streets, in which abutting owners or the public may have enforceable special rights, the site of the old clerk's office, not having been used for that purpose by the county since 1850, reverted to the town, the county thereafter, having the clerk's offices in its courthouse; and the court erred in instructing the jury that this clerk's office site should be included in the property to be awarded to the county; and the court also erred because not only had this particular site reverted to the town by failure to use the same for 58 years, but also by reason

of the continuous use and possession thereof by the town, and the express agreement made in writing by the acts of the parties in 1850, whereby the old clerk's office was ceded by the county back to the town, and whereby the abandonment of the dedication by the county was clearly expressed.    Same authorities.

The occupancy of the square being dual, and, wherein the county may have exceeded any portion dedicated to it, permissive by the city to the county, and the square being patented to the town, the town did not lose any right by failure to use specific portions, if any, outside of the dedicated areas.    City of Victoria v. Victoria County, 100 Texas, 438.

As the evidence undoubtedly showed that the occupancy of the square had been dual, and as the Supreme Court had so expressly decided, upon the same record, the court should have so charged the jury in connection with a statement that the jury should take in consideration the respective acts of the parties, and that no site for the county could be extended over and beyond the sites for buildings contemporaneously occupied and used by the town.    A dedication can not be defined by use beyond the area used.    State v. Trask, 27 Am. Dec., 558, 559, 6 Vermont, 355.

The burden is upon the dedicatee to prove the dedication and its extent, by clear and unequivocal acts, and a description of the dedicated property; and the dedication can not be more extensive than the use.    City of Houston v. Finnigan, 85 S. W., 474; Carlinville v. Castle, 69 Am. St. Rep., 214, 215, 117 Ill., 105; State v. Trask, 27 Am. Dec., 558, 559, 6 Vermont, 355.

*R. L. Daniel* and *Proctor, Vandenberge & Crain,* for defendant in error.—The opinion of the Supreme Court in this case, as reported in 100 Texas, page 438, is:

(1)    That the Act of December 10, 1841, placed the title to this square in the town of Victoria.

(2)    That the town authorities were required by the charter of Victoria to build for the county a courthouse and a clerk's office, and a jail, and were authorized to locate same upon this square, and in so doing they thereby dedicated to the county grounds for said three buildings.

(3)    That in determining the extent of this dedicated area, the condition of affairs at the time the Act of 1840, which was the Act requiring the erection of said buildings, was passed, and at the time the three original buildings were erected, must govern, and not conditions which existed since said times.

(4)    That the dedicated area was not confined to the ground covered by these three original structures, but would include "such additional space as was reasonably necessary and convenient for the purposes for which these three buildings were erected," i. e., a courthouse, a jail and a clerk's office for Victoria County.

(5)    That no claim or possession, subsequent to said times aforesaid, and no subsequent erection upon this square of any other buildings by city or county, could in any wise reduce or increase this dedicated area.

(6)   That the determination of the extent of this dedicated area was the only material fact issue to be determined in this case upon any subsequent trial.

(7)   That neither party had acquired any title to any portion of this square by limitation, the possession being too conflicting to support adverse possession sufficient to give title by limitation.   The City of Victoria v. Victoria County, 100 Texas, 438; Vasser v. City of Liberty, 110 S. W. Rep., 119.

It was the province of the Supreme Court of this State to state, as a matter of law, the legal test to be applied by the jury in deciding the issue of fact as to the extent of this dedicated area, but it was entirely without the power of the Supreme Court to itself fix or define the physical boundaries or limits, upon this square, of the area of such dedication, and the opinion can not be construed as any attempt so to do.

If the jury believed, from the evidence, that all that portion of the square involved in this case constituted reasonably necessary and convenient grounds for these three original buildings, testing such inquiry in the light of the times required by such test, then it was clearly the jury's prerogative to so find, and any reversal of their verdict, in such regard, by any appellate court, would constitute an interference with the jury's decision of an issue of fact.

For the court to have instructed this jury that they were not at liberty to find that all of the property sued for was within the definition of reasonably necessary and convenient grounds for said three old buildings, but that they could only find that "parts of the property sued for" met such test, would have been a direct charge upon the weight of the evidence.

It was clearly the duty of the jury to apply the test laid down by the Supreme Court, as to the extent of this dedicated area, to the entire subject matter of this suit, and if they thought all of the property sued for met such test, to so say in their verdict, or, if they thought only portions of the property sued for met such test, to define such portions, and award the city a verdict for the balance of the property sued for.   Therefore, in order to leave the jury at liberty to apply the test to the entire subject matter of the suit, it was clearly the court's duty to plainly instruct the jury that they could award to the county all, or such portion, of the property sued for as they deemed constituted the dedicated area, under the test laid down by the Supreme Court of the State.

The particular dedication made by the city of the grounds for a courthouse, jail and clerk's office for Victoria County, is an irrevocable one.   The originally dedicated area remains the property of Victoria County so long as said dedicated area is used for similar purposes as the purposes of the three old buildings, and there is still a jail, a courthouse and clerk's office upon such dedicated area on this square.

The existence of such dedication is not identical with the life of the three old buildings.   If the city dedicated the area for the use of the county, it must have contemplated in such dedication that other buildings would succeed the particular buildings built by the city for the

county, and it is wholly immaterial that those particular succeeding buildings should not have been located upon the very water tables of the destroyed buildings.

The area determined by the jury to be the dedicated grounds of the original three buildings, being still used by the county for courthouse, clerk's office and jail purposes, no condition has ever arisen for any reversion of title to the city.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

As will appear from a former report of this case (100 Texas, 438), it involves the title to a square of land in the city of Victoria. The decision upon the other appeal establishes the propositions, that the title was vested in the city by patent issued to it in 1841 under authority of the Act of Congress of that year; that this title has not been lost by limitation; and that such right as the county has must be derived from dedication made to it by the city of a part or parts of the ground for use as sites for a courthouse, a jail and a clerk's office. That decision further holds the law of the case to be, that the city was charged by the statutes therein referred to with the duty of furnishing to the county those buildings and had power thereunder to dedicate a part or parts of the square as sites therefor; that there was evidence of dedication including part, but not the whole, and that the power to dedicate, when exercised to the extent indicated, was exhausted. It was further held that the dedication actually made by the city was not confined in extent to the area upon which the buildings stood, but would include such additional space as was reasonably necessary and convenient for the purposes for which the buildings were erected; and that in determining this, that is, what space was to be included in the dedication as incidental to its purpose, the condition of affairs when the Act of 1840 was passed and when the buildings were erected and not what they may have been since that time should govern. The cause having been remanded to the District Court a new trial was had before a jury upon the same evidence that was before this court when the decision referred to was rendered; and the question whether or not the dedication included the whole of the square was submitted to the jury and answered in the affirmative. The judgment rendered on that verdict, affirmed by the Court of Civil Appeals, is the one now before us.

It seems to us impossible to reconcile this result with the holdings of this court in the former appeal. Not only did the opinion say all we have just stated, but our judgment, reversing those of the District Court and of the Court of Civil Appeals, could never have been pronounced had we thought there was evidence of a dedication of the entire square. The trial court, besides other reasons given for denying the city any recovery, had held that the evidence did show a dedication of the whole of the ground, and if, in our opinion, that holding had been sustained by any evidence tending to show so extensive a dedication it would have been our duty to affirm it. Instead of doing that, we reversed it, saying that the only evidence of any dedication was of such as was authorized by the Acts of Con-

gress referred to, of a part or parts of the square as sites for the buildings. The other language above quoted as to the extent of the dedication was also used, but was used to indicate what might be included as incidental to a dedication of such part or parts and with no thought that it could be regarded as suggesting that it possibly could include the whole. But it was apparently upon a misunderstanding of our meaning that the action of the trial court was based in so submitting the case to the jury as to allow them to find all the land for the county upon the same evidence which this court had held did not justify such a result. Adhering as we do to our former decision we can not, of course, allow the judgment to stand, and as that decision admits of a recovery by the county of only such part of the square as may be found, consistently with the evidence, to have been dedicated to it by the city, that part ought to be defined by our judgment as closely as it lies within our power to do, in order that the litigation may be brought to as early an end as is consistent with a correct determination of the rights of the parties.

The city, acting with the representatives of the county, being charged by the legislation on the subject with the duty of building a courthouse, jail and clerk's office for the county, and having the power to use as sites therefor land granted to it, among which was this square, the object of the inquiry is to ascertain, as definitely as may be, what it did in the exercise of that power. Whatever ground appears, from what it did, to have been devoted to the uses mentioned before its power was exhausted should be held to have been dedicated to the county. The fact that it did locate these buildings on the square, therefore, puts beyond peradventure the fact that a dedication was made. What its extent was is the question. But for the other uses than those of the county to which the square was put by the city the claim of the county that there was a dedication of the whole, although hardly established affirmatively, as it must be, would not be affirmatively negatived. But the uses and the conduct of the parties, conclusively shown and virtually admitted, convinced us, when considering the case before, that a just construction of them repelled any conclusion that there had been more than a dedication of a part. A summary of the evidence upon which the conclusion must depend will be given. The earliest buildings erected on the square were, *first,* a log jail, which will be referred to as the first jail; *second,* a small brick structure, for a clerk's office, and, *third,* a courthouse, called the old courthouse. This jail was completed early in 1841 under the joint supervision of county and city authorities and paid for jointly by each. The clerk's office was built in 1847 and paid for by the county. The courthouse was built in 1849 by the city. The record is not clear as to the time when it was completely turned over to the county. It appears that in November, 1849, the Commissioners' Court authorized a contract for the renting out to the Sons of Temperance of one of its rooms, but other facts make it uncertain whether or not the city had then surrendered actual possession or control of the building. For on the 2d of February, 1850, the city council authorized the secretary to take possession of the building by locking it up and delivering the

keys to the mayor, and authorized the mayor to rent out for offices only, by public auction, portions occupied by the Sons of Temperance and Free Masons, who were required to deliver to the mayor on the day of letting. On the 16th the city attorney was directed to arrange the difficulty between the town and county relative to the courthouse. On the 19th of the same month appears an entry on the minutes of the Commissioners' Court which recites that in the construction of the courthouse the "corporation" assigned and claims the right to use one of the rooms for a municipal hall, but that it is more convenient for town and county that the former occupy the old clerk's office, and ordering that it be set apart for the use of the town forever, and appointing a commissioner to make a deed conveying to the town the "perpetual use and control of said building forever," which order was to take effect and the deed be made on condition that the town execute a deed of release and quitclaim conveying to the county all the right "they" may have in and to the courthouse. The order further provides that as the clerk's office has been rented out for a year, the town may use a designated room in the courthouse until the expiration of the time; also that the court deems that there is "much propriety" in the claim of the city; that as an act of justice to "them" the rents for the upper rooms (of the courthouse) be appropriated to its improvement and adornment, which improvement and adornment is ordered to be done by the purchase of seats or a lightning-rod and a bell. On the 20th of the same month the city council accepted the proposal of Commissioners' Court just stated and ordered the secretary to draw the necessary writing for "completing said transfer." At the same time an order was entered for the widening of streets by taking off parts of public squares, including "Courthouse Square," which was accordingly done. No deeds or writings of the kind referred to in the recitals just stated have been found, but it appears that for many years and until it was finally removed, the city had the possession, use and control of the old clerk's office so set apart to it. None of the three buildings already mentioned remain on the square and their exact sites can not be shown with perfect accuracy. It appears, however, that all were on the southern half of the square; the old courthouse in the southeast quarter, the clerk's office to the rear and west of it and the first jail near the west line of the square, south of a line running through its center from east to west. The courthouse was nearest the streets east and south, the clerk's office nearest that south and the jail nearest that west of the square, so that each of these streets would have been the natural approach to at least one of these buildings. In 1852-3 the county built its second jail, a brick structure, which still stands. It is near the site of first jail, but extends further north and nearer the middle line of the square.

If we pause here in the statement of the facts from which the extent of the dedication is to be determined, we think the case will be presented at its strongest for the county, and yet we can not agree that there is, in the statement, anything to justify the inference that the whole square was dedicated. The buildings, the locations of which, together with their natures and the purposes of their con-

struction, furnish all the material for solving the question, were all located on the southern half of the square. Nothing in their locations, or in the uses to which they were to be put, indicated any devotion of any other part of the square to county purposes. If we should look to the well-known custom of setting apart to counties entire squares and of locating courthouses in the centers thereof, we should at once see that no such custom was followed in Victoria County.

In addition to the facts stated, there is the evidence of an old map on which the square in question was marked "Courthouse." We shall assume that this was the original or a copy of a map of the town authorized and adopted by its authorities at an early day, but can see in the words on it nothing more than a pointing out of the location of the courthouse. It must be remembered that the square had already been laid off and dedicated as Municipal Square in the old survey of the town tract, and the mere delineation of it on the map is only a reproduction of that survey, and the words added are indicative of nothing but the site of the courthouse. For this reason the map is not to be regarded as an act of dedication of the squares previously existing, as is usually true of the platting of land, showing spaces designated as public squares or parks. The further fact that the square is sometimes spoken of in the proceedings of the town council as Courthouse Square is of like significance only. There is also evidence that for a long time there was a fence around the square, which in its later history was repaired and controlled by the county; but when and by whom the first inclosure was made the evidence fails to show, and it is hardly true that there is evidence that during the time the dedication was taking place, or immediately after that at which it must be assumed to have become complete, there was an enclosure belonging to, or controlled by, the county. The connection with and use of the square kept up by both county and city were such as to make it not unreasonable to assume that either alone, or both jointly, may have enclosed it, and, in view of that connection, it can not be presumed that the county alone did it. But if it were shown that it did, the fact would be wholly inadequate to sustain an inference of a dedication by the city of the whole of a square of which a part was being constantly used by it. An enclosure by the county would be explained by the existence of a right either to a part or to the whole; but the attitude of the city, in its insistence upon and maintenance of a right to use parts of the square, is utterly inconsistent with an inference that, by the very course of conduct of which that was part, it had relinquished the whole to the county. It is true that if it were shown otherwise than by implication from its conduct, that the city had dedicated the entire square, its subsequent wrongful or permissive use of parts of it would not impair the effect of such action; but we have only its conduct from which to infer a dedication, and certainly that conduct can not justify such an inference as the county seeks to draw when it is found to consist of the use by the city of part of the ground which the county claims was devoted exclusively to it.

We thus speak of the city as having kept up a constant use of

parts of the square, because of the fact that before it surrendered to the county, so far as appears, the courthouse, the third of the buildings for the construction of which it was to furnish the funds and the sites, and therefore, before there was any completion of the dedication it was authorized to make, it asserted a right to a use of part of that building, and by agreement received the old clerk's office instead. Just at this time the manifestations of its hold on the square were probably weaker than they were at any later date, which is our reason for saying above that the facts then existing, considered alone, present the case for the county in its strongest aspect. But they should not be so considered. The subsequent conduct of the parties, especially their user of the ground, unquestionably may serve to throw light on the question as to the limits of a dedication already made, but not expressly defined in extent. If, for instance, soon after the completion of the buildings named the city had entirely withdrawn from the square and ever after left it in the exclusive possession and control of the county, asserting no right to, and making no use of any part of it, is it not obvious that the assertion by the county of a dedication of the whole would be stronger? and is it not equally obvious that such assertion grows weaker in proportion to the extent of the possession, use and control afterwards maintained by the city? The county, showing a dedication by location of its buildings, must rely upon user and other conduct of the city to indicate the extent of such dedication; and facts occurring after as well as before such location may throw light upon the inquiry. The expression in our former opinion is not to the contrary. A statement of the transactions subsequent to those above detailed is given in the former report and need not be repeated here. It shows, in short, that since the time when the old clerk's office was turned over to it until ousted by the county a few years before the suit was brought, the city has constantly had and controlled that or other buildings erected by the city upon the square; and there is undisputed evidence of other uses by the city. It is incorrect to say that this appears to have been done merely by permission of the county. The attitude assumed by the city from the first, in the action directed by it as to the courthouse, was not that of one asking a favor, or concession, but of one asserting a right as well as the power to protect it. It may be true that, in law, it had no right to the control of any part of the courthouse or of ground dedicated to the county, because such property must be controlled exclusively by county authorities appointed by law; but the assertion of such a right was a denial of that which the county is now claiming to have received by concession from the city—the right to the entire square, and was the means of obtaining and retaining for the city the possession and use of parts thereof; and all this constitutes part of the conduct of the city from which it is claimed the dedication is to be inferred. It not only does not raise such an inference; it negatives it. Uncertainty in transactions between the authorities of city and county does not help the latter. The burden is on it to show by the conduct of the city a dedication and its extent. The city was all along the owner of the property, and

its acts with reference to it must be taken as done in that capacity rather than as a tenant or licensee of the county until the latter is shown to have been the case.

As the entire square has been found by the triers of the facts to have been dedicated, it is our duty to give to that finding the largest effect the evidence will bear. Certainly, the ground upon which the courthouse, clerk's office and jail were located were dedicated. So much, our former opinion virtually holds. The task now is to determine how much ground went with them, and that is to be done by seeing what intention the acts done in making the dedication, taken most strongly in favor of the county, may reasonably be held to show. The character of the buildings, the fact that they were all to be owned and used by the county, in connection with each other and for kindred purposes, would make it irrational to conclude that the intention was to separate them from each other by the intervening spaces, as would have been the result if the dedication were restricted to the spots on which they stood. Equally irrational would be the imputation of an intention to dedicate a piece of ground of such irregular shape as would be formed by the areas on which the houses stood connected merely by passways between. Rather would it be probable that the dedication was intended of a part of the square in regular form on which all the buildings might be put. Provision for access to and from the streets to each of the buildings would also be looked for as probable. With these thoughts in mind, the locations of the buildings naturally suggest the extent of the area of which the evidence tends to show a dedication. All of them being upon the south half of the square, with natural outlets into each of the streets constituting three of its sides, the fourth line naturally indicated, which would include both the first and second jail, is one through the middle of the square from east to west. This gives the south half of the square, which is all that the dedication, as it was made and not expressly defined, indicates as its limits.

All the subsequent actions of the parties are not in line with this conclusion. The city for a long time had buildings upon and used parts of the south half of the square; and in 1884 the county built its present jail on the northeast quarter of it. In our former opinion we held that when the dedication became complete the power given the city to that end was exhausted; and it is equally true that the dedication, when complete, was irrevocable. Many of the dealings of the parties with each other evidently were conducted upon understandings that each should use parts of the square, but so far as is shown, with no definite agreement between them or conception on the part of one what the rights of the other were. Probably all the time there was the difference, settled by our former decision, as to the title; and hence, it is not to be expected that all their conduct will conform to any theory. The completion of the buildings completed the dedication, and when its extent is deduced, as we have indicated, the titles of the parties must be held to have become fixed accordingly. The action of the city in maintaining at all times its claim to parts of the square repels any inference that it dedicated

the whole, but can not be allowed to impair the legal effect of the dedication of the part defined by what it did.

As to the action of the county in extending its possession beyond the ground dedicated, that alone can not, of course, extend its title derived from the dedication; nor can the assent of the city thereto be recognized as a further dedication, for the reason that, as settled by our former decision, its power was then exhausted. The titles of the parties to the ground, therefore, remain unaffected by the action just mentioned.

There is, indeed, a contention by the city that a cessation by the county of its use for the purposes of the dedication of any piece of ground would constitute an abandonment thereof, in which event the fee would be in the city. This is upon the assumption that the particular pieces of ground occupied by the different buildings were separately dedicated, which is not the conclusion reached by us. The courthouse and the second jail remain upon the south half of the lot, and it can not be admitted that any part of it is abandoned while thus used.

We have said that the action of the county taken with the assent of the city in building its new jail in 1884 upon its present site did not change the title to that ground; but we do not mean by that to hold that the city now has the right either to recover the jail, or the possession of the ground it occupies, or to require the county to move its building. On the contrary, the granting of any one of those prayers would be unjust in the highest degree. The city at that time had in that part of the square a building of its own, used for its own purposes, and, by treaty with the county, consented to move it in order that the jail might be built, in consideration of the granting by the county to the city of the use of the second jail. This agreement was carried out in full. The county expended a large sum of money in the erection of the new jail, and has kept it at its present site with the full assent of the city.

That a municipal corporation may by its conduct estop itself to assert its title to property is held in the case of Krause v. City of El Paso, 101 Texas, 211. In that case there was an uncertainty as to the lines of streets and lots, which there was nothing on the ground to mark, and the city by its conduct had induced the owner of a lot to believe that it included the land in controversy, on the faith of which conduct such owner put expensive and permanent improvements on the ground; and it was held that the city, although originally the owner of the soil as a street, was estopped from claiming it as such to the destruction of the improvements put there upon faith of its conduct. In this case there is nothing to indicate a misleading of the authorities of the county by those of the city as to any facts. The facts determining the rights of each were probably as well known to one as to the other. While the city, therefore, did nothing which can properly be held to have so fully estopped it as to disable it from claiming title to the soil, it does not follow that the court should give aid by its process to the infliction of such great and unnecessary injury as would result to the county from the loss or the enforced removal of its jail. The full assent and

long acquiescence of the city in such public use of property, held by it for public uses, the facts that there is no pretense that it is needed for any other public purpose, or for any use of it by the people of the, city, or that any injury is suffered by the public if the jail be properly kept, justify us, we think, in applying the equitable doctrine of estoppel and acquiescence to the extent necessary to protect the county from the consequences of such a change of attitude on the part of the city. City of Atlanta v. Gas Co., 71 Ga., 125; Chicago & N. W. Ry. Co. v. People, 91 Ill., 251; Gregston v. Chicago, 145 Ill., 451; 16 Cyc., 781-2, and cases cited.

That does not require that we hold that the city has lost its title. The county will be protected in all it was induced to do by the conduct of the city if it be allowed the use of so much of the lot as is essential to the proper maintenance of the jail so long as the present building shall be kept in its present location and be used as a county jail; and the giving of such protection is the purpose of the doctrine referred to. 16 Cyc., 783, and cases cited.

In its petition the city, in addition to its action for recovery of the property, alleged the allowing of certain conditions by the county upon the square, and in connection with the keeping of the jail, charged to constitute nuisances. We do not understand that cause of action to be urged now, but if there should be ground for relief against such things it may be shown when the cause goes back. Certain cesspools and privies are referred to in the pleadings and evidence. Our conclusions, already stated, preclude the keeping of such things in the northern half of the square as incidental to the buildings on the southern half. Our conclusion as to the right of the county to keep its jail where it is, involves its right to have necessary ways to and from the street east of it and to and from the courthouse over the ground, the title to which is held to be in the city, and also over so much of such ground as may be required for necessary sewerage or drainage. We can not definitely determine all these matters, and in reversing the judgment will remand it to the District Court with instructions:

(1) To adjudge the title to the northern half of the square to the city, and also the possession of all of such half except such part as shall be left in the possession of the county for the maintenance of the present jail.

(2) To adjudge the entire southern half of the square to have been dedicated by the city to the county as site for the courthouse, jail and clerk's office.

(3) In case the parties or either of them desire that it be done, to cause the two halves to be surveyed and marked off.

(4) To adjudge to the county the right to the possession and use, for the maintenance of its present jail, as above indicated, of so much of the northeastern quarter of the square as may be necessary for that purpose and no more, such right to continue so long as the present building shall be kept and maintained in its present site by the county as a county jail and no longer.

(5) To take such further action as may be shown to be necessary towards the abatement of any nuisances that may be shown to exist.

(6) To provide for the removal of cesspools, or other things kept upon the ground by the county, the keeping of which is inconsistent with this opinion and the judgment to be rendered by this court.

*Reversed and remanded with instructions.*

### ON MOTION FOR REHEARING.

The argument of counsel for the city raises but two objections to the disposition made of the case, which are (1) the application of the doctrine of estoppel against the city so far as to protect the county in the use of the site of the present jail as indicated in the opinion, and (2) the failure to secure to the city a like use of the site of the second jail called "the old jail," granted to it by the county in the treaty by which the latter secured the right just mentioned.

1. The arguments now urged against the solution given in our original opinion were all anticipated and considered before the decision was announced. The difficulties in applying the doctrine of estoppel to the municipal corporation were fully appreciated, and yet we were satisfied and are yet satisfied that situations sometimes arise in which the demands of justice to others ought to outweigh the considerations which ordinarily and properly protect such municipalities against the consequences of the unauthorized action or non-action of their officers and agents. Such a situation is presented by the facts of this case, which probably is unprecedented and will not be followed by any like it. The square was originally dedicated as ground for public buildings, and the city, on becoming the owner, was empowered to assign to the county by dedication sites for those so often mentioned. The action of the city was so uncertain that it would have been difficult for a court, and much more so for the parties, to have defined at any time the extent of the rights of either. There is, we think, no violation of the spirit of any principle in protecting one of them in a use of a part of such ground the same in character as those to which it was originally devoted under such an arrangement as that in question by which difficulties arising out of the uncertainties of the situation were practically adjusted. The equitable doctrine of estoppel and acquiescence is not so narrow or technical as to afford no guide. It can be fitted exactly to the situation and made the rule to secure a result just to both parties. The property is not diverted to a different kind of use from that originally intended and the community at large is not injured by the application of the principle. The statutory provisions concerning compensation for improvements in good faith in actions of trespass to try title do not fit the case. They proceed on the assumption that improvements have been made on an estate to be recovered by its owner enhancing its value to him. That which exists here is hardly to be called an improvement at all. It causes no addition to the value of the estate, in the sense of the statute, being comparatively valueless except as a jail.

2. That to which the agreement and the erection and use of the jail under it gave rise was held to be only the right to occupy

the ground for that purpose so long as the jail is kept and used there. It follows that the city had only a corresponding right to use the old jail and the ground· it occupies. If the city voluntarily ceased to use the old jail for the purpose agreed on before it was ousted from the entire square by the county, its right to hold and use it and the ground it occupies ceased; but if the city while still making the use which it was entitled to make by the agreement, was expelled by the county it should be restored. The county can not insist on keeping that which it received under the agreement and at the same time deny to the city the corresponding right. But the right was only to use the property, and a voluntary cessation of that use by either party would end such right. We received the impression that this was true, but as there may be some question about it, we have concluded to so enlarge the instructions given as to permit inquiry into the question whether or not the city voluntarily ceased to use the old jail or was ousted therefrom by the county and a judgment conformably to the finding thereon and what we have said in our opinions.

*Reversed and remanded with instructions.*