· **COUNTY OF NUECES, State of Texas,**
**Appellant,**

v.

**Sybil SALLEY et al., Appellees.**

No. 13756.

Court of Civil Appeals of Texas.

San Antonio.

June 21, 1961.

Rehearing Denied July 19, 1961.

being 100 feet wide, and 443.9 feet long on the west side, and 482.5 feet long on the east side. The case was tried to a jury, and they answered the special issues as follows: (1) That the strip of land taken, together with improvements, was of the market value of $15,500. (2) That the market value of the residue, exclusive of the land taken, immediately before the taking, was $24,070; and (3) that immediately after the taking, such residue was of the market value of $8,750. Judgment was rendered for the sum of $31,000, total compensation for the land taken, and damages to the remaining land.

Appellant predicates this appeal upon seven points. However, under the view we take of the case, we need to pass only upon appellant's fourth point. Under this point appellant contends that the court erred in failing to grant a new trial because there is no evidence to support the jury's answer to Special Issue No. 3, showing a decrease of $15,500 in the market value of the remaining land immediately after the taking of the forty-foot strip. In passing upon this point, we must view the evidence in the light most favorable to the finding, and disregard all evidence which is against the finding. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Franklin L. Smith, County Atty., C. Edwin Prichard, Jr., Asst. County Atty., Corpus Christi, for appellant.

Butler, Williams & Stone, Corpus Christi, for appellee.

### BARROW, Justice.

This is a condemnation suit brought by the State of Texas, acting by and through the Commissioners' Court of Nueces County, Texas, against Sybil Salley, a feme sole, as owner and First Savings and Loan Association as mortgagee of the property sought to be condemned. Said property being a strip of land about forty feet wide and one hundred feet long on the front end of Lot 5, Block III, Highway Village Subdivision, Nueces County, Texas, adjacent to State Highway No. 9, and containing .092 acres, more or less. The entire lot

Two witnesses who testified for appellees on the value of the residue land immediately before and after the taking, were appellee Sybil Salley and Leon J. Tolle. Each testified that they together made up an inventory of the nursery plants on the forty foot strip taken, and on the residue. This inventory was introduced in evidence. Mr. Tolle, appellees' expert, testifying with reference to the inventory, said that there were plants on the remainder of the land of the value of $17,729.63. This figure included merchandise for sale in the amount of $14,681.38. The balance being rooted stock, plants in the ground. Appellee Sybil Salley testified, regarding damages to the residue, that the market value of the residue of the land immediately before the

taking was $10,000. Then when asked what was its value immediately after the taking answered: "It was of no value. Zero." She was then asked by her counsel what was the difference in the value of the remaining land after the strip was taken, to which she answered $6,000. The record is not clear whether, in giving these values, the witness excluded the plants on the land. Nor is the record clear as to whether she valued the land at $6,000 after the strip was taken, or whether that figure represented its reduction in value. Appellees contend that the jury's answer in the sum of $17,729.63, included both the value of the remaining land and the value of the plants immediately before the strip was taken. The evidence is undisputed that the plants remained on the land after the taking, both the stock plants and merchandise for sale. The land and the buildings thereon remained the same. Therefore, appellees' evidence does not support the jury's finding that the remainder was reduced in market value, by reason of the taking, from $24,070 to $8,570. Appellant's witnesses testified that the value of the remainder of the land would be the same after as it was before the taking of the forty foot strip.

Appellees contend that there were two other items that the jury could consider with reference to the remainder. Appellees' witness Joe Benson testified that in order to conduct a nursery on the remainder, some of the buildings would have to be moved and re-arranged. And Mr. Tolle testified that the plant material on the remainder would be less valuable because the customer appeal was somewhat destroyed. In regard to the removal of the buildings, there was no evidence of the reasonable cost of the removal. In regard to the matter of customer appeal, there was evidence that a display of flowers to attract customers had been planted on the forty foot strip taken, but the evidence shows that this display was taken into consideration and its value was reflected in the damages awarded for the land taken. Moreover, to consider customer appeal as an element of damage to the remainder would have the effect of selling the business.

It is well settled that the measure of damages to the residue of the property is the market value thereof immediately before the taking, less the market value immediately after the taking. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979. The correct method of adducing evidence as to market value is by witnesses, after suitable qualification, giving their opinion as to the market value of the residue before and after taking, rather than undertaking to testify to specific items of injury or damages. State v. Carpenter, supra. While it is proper to testify as to the facts which bring about a reduction in value of the residue, these facts must be related to the market value and cannot be considered unless they are so related.

We are of the opinion that the reduction in the sale value of the nursery stock, being personal property, could not be considered as proof of the reduction of the value of the residue of the real estate. When this element of damages is eliminated, the jury is left to conjecture as to the amount of reduction in value. Therefore, appellant's point that there is no evidence to support the jury finding of the reduction in value of the residue of the land in the sum of $15,500 must be sustained.

In view of another trial of the case, we think it advisable to discuss some of the other points of error. Mr. Benson, a witness for appellees, was permitted at the outset of the trial to testify, over appellant's objection, that a reasonable salary for a plant propagator is $300 a month. In that connection, the evidence shows that appellee's mother is a plant propagator, and that she propagated the original stock plants. That she also did other things about the place, and that she propagated plants for sale and sold them. There was no attempt to show how much of her time, during the four years, was spent in making permanent improvements to the property, but

the jury was allowed to consider such salary for the four years, without any limitation as to its relation to permanent improvements of the real estate, either as to the portion taken or as to the residue. We are of the opinion that this was error. We are also of the opinion that the court erred in permitting appellee to testify concerning money expended by her in the conduct of the nursery business for such items of personal property as pots, cans, a truck, soil grinders, spreaders, fertilizers and for maintenance. This record fails to show any relevancy between the large sums of money spent for these items in the conduct of the nursery business over a period of years, and the market value of either the land or the plants on March 30, 1955. The evidence could have no purpose other than to prejudice the jury against appellant.

 Also, in view of another trial, it is our opinion that the trial court's issues on the value of the land taken and the residue, both before and after the taking, were error because of the inclusion of the expression "including improvements thereon." We think it was error, because of the fact that defendants' evidence throughout the trial valued the land and the nursery stock separately. The use of the language would lead the jury to believe that it would be proper to add the two values together. We think the issues should inquire as to the value of the land, as land, as pointed out in the Carpenter case, supra. In that connection, the jury should be instructed that they may, in valuing the land, take into consideration permanent improvements on the land, insofar as such improvements add to, increase or enhance the value of the land as such. State v. Carpenter, supra; Lower Nueces River Water Supply Dist. v. Sellers, Tex.Civ.App., 323 S.W.2d 324, ref. n. r. e.; Fort Worth & D. S. P. R. Co. v. Gilmore, Tex.Civ.App., 2 S.W.2d 543. Moreover, the court was in error in giving the all inclusive definition of the word "improvement". It should give the well settled definition of the words "permanent improvements." "The phrase 'permanent improvements' means something done to or put on the land which the occupant cannot remove or carry away with him, either because it has become physically impossible to separate it from the land, or because, in contemplation of law, it has been annexed to the soil and is therefore to be considered a part of the freehold." 14 R.C.L. 15; 23 Tex.Jur. 375, Improvements, § 2; 19 Tex.Jur. 703, Fixtures. See also, City of Victoria v. Victoria County, 103 Tex. 477, 128 S.W. 109, 129 S.W. 593.

On account of the error above pointed out, the judgment of the trial court is reversed and the cause remanded.