Ralph ABLIN, and wife, Judy
Ablin, Appellants,

v.

**MORTON SOUTHWEST COMPANY and
The Overhead Door Company of San
Antonio, Incorporated, Appellees.**

No. 04–89–00573–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 30, 1990.

Rehearing Denied Feb. 13, 1991.

Tuck R. Chapin, San Antonio, for appellants.

Mark R. Stein, Cathy J. Sheehan, Plunkett, Gibson & Allen, Richard J. Reynolds, III, John Milano, Jr., Aimee Kolze, Thornton, Summers, Biechlin, Dunham & Brown, P.C., San Antonio, for appellees.

Before PEEPLES, BIERY and BISSETT,[1] JJ.

## OPINION

BISSETT, Justice (Assigned).

This is an appeal by Ralph Ablin and wife, Judy Ablin (hereinafter "the Ablins"), plaintiffs in the trial court, from a summary judgment in favor of Morton Southwest Company (hereinafter "Morton Southwest") and Overhead Door Company of San Antonio, Inc. (hereinafter "Overhead Door"), defendants in the trial court. We affirm.

The main question to be answered in this case is whether the automatic garage door opener in a residential building is, as a matter of law, an "improvement to real property" within the purview of TEX.CIV. PRAC. & REM. CODE ANN. § 16.009 (Vernon 1986). We answer that question in the affirmative.

The Ablins filed suit against Morton Southwest on May 20, 1988, claiming that it sold, installed and placed into service the automatic garage door opener (hereinafter the "garage door opener") which allegedly caused the death of Christopher M. Ablin, their six-year-old son. They made Overhead Door a defendant to the lawsuit on August 26, 1988. They alleged in their fourth amended petition, their trial pleading, that the garage door opener was purchased by Morton Southwest from Over-

---

1. Assigned to this case by Chief Justice of the Supreme Court of Texas, pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

head Door, who installed it in a house that was located at 5831 Ft. Stanwix, in the Valley Forge Subdivision, San Antonio, Texas; that the death of their son on March 17, 1987, came about as he attempted to leave the garage after activating the remote control unit inside the garage, which caused the descending garage door to strike him as he left the garage, and choked him to death; that Morton Southwest is liable to them in damages under a "Defective Products Liability Theory"; that Overhead Door is liable to them in damages for constructive fraud because Morton Southwest ordered an "Alliance" automatic garage door opener from Overhead Door, which was to be installed in the garage to the home at 5831 Ft. Stanwix, and Overhead Door actually sold and installed a "Relaytron Unit," which was defective and unsafe; and that both Morton Southwest and Overhead Door are liable to them in damages because of the sale and installation of a defective and dangerous automatic garage door opener, which violated the provisions of TEX. BUS. & COM. CODE § 2.314(b)(3) (Vernon 1968) and §§ 17.46(b)(7) and 17.50(b)(1), (2), (3) (Vernon 1987) and the TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT, "which were in effect on the date of the sale, which occurred on September 30, 1975." Both Morton Southwest and Overhead Door filed general denials, and Morton Southwest also pled the two-, four- and ten-year statutes of limitations as a defense to the action.

Both Morton Southwest and Overhead Door filed motions for summary judgment, wherein each pled:

Defendant would show as a matter of law that plaintiffs' cause of action is barred due to their failure to file their lawsuit within the prescribed period of limitations.

Specifically, defendant would show that pursuant to Section 16.009 of the Texas Civil Practices [sic] and Remedies Code, plaintiffs' cause of action is barred under the aforesaid cited statute of repose.

The Ablins filed responses to the aforesaid motions. Both motions for summary judgment were granted, and the Ablins have timely appealed from the judgment, which was signed on September 26, 1989.

The Ablins contend in their first two points of error that the trial court erred in determining as a matter of law that Morton Southwest and Overhead Door "constructed or repaired an improvement to real property as that term applies to Section 16.009 of the Texas Civil Practice and Remedies Code." We disagree.

The summary judgment evidence consisted of certified copies of portions of the depositions of the Ablins; depositions of Raymond Wells and Ray Wiley, vice-presidents of Morton Southwest; affidavits attached to movants' motions and to the responses by the Ablins, together with exhibits attached to and made a part of the affidavits. We first summarize the summary judgment evidence insofar as it relates to the first two points of error.

It is uncontroverted that: (1) Thomas Bryan Lyons and wife, Charlotte Lea Lyons, and Morton Southwest executed an Earnest Money Contract of Sale on June 17, 1975, whereby Mr. and Mrs. Lyons agreed to purchase from Morton Southwest a house in the Valley Forge Subdivision, San Antonio, Texas, whose street address is 5831 Ft. Stanwix; (2) paragraph 3 of the contract recited that the total purchase price includes (among other items not relevant hereto) "an automatic garage door opener:",[2] (3) Morton Southwest completed the construction of the house at 5831 Ft. Stanwix sometime prior to September 30, 1975, when it conveyed the land upon which the house was situated to Mr. and Mrs. Lyons; (4) the garage door opener in question was already installed in the house on the date of said purchase and sale; (5) Mr. and Mrs. Lyons and the Ablins executed an Earnest Money Contract of Sale on October 10, 1986, whereby the Lyons agreed to sell the property to the Ablins; (6) the contract recited that the property to be sold included (among other items not

---

2. The brand name did not appear in either of the Contracts of Sale.

relevant hereto) "garage door openers with controls"; (7) the property was sold by Mr. and Mrs. Lyons to the Ablins by deed dated November 5, 1986; (8) after the house at 5831 Ft. Stanwix was completed and sold to Mr. and Mrs. Lyons, neither Morton Southwest nor Overhead Door altered, modified or repaired the garage door opener, and neither had possession of or dominion over the sold premises; (9) the garage door opener, as originally installed, was still in place on the date of the accident; (10) Morton Southwest intended the garage door opener to be an improvement to real property; (11) the accident made the basis of this suit occurred on March 17, 1987; and (12) the Ablins filed this suit against Morton Southwest on May 20, 1988, and against Overhead Door on August 26, 1988.

Mr. Lyons stated in his controverting affidavit to the respective summary judgment motions:

> [I]n connection with the garage door opener, the unit is attached to the sheet rock in the garage, by four (4) bolts and is easily removed by unscrewing those bolts....
>
> .    .    .    .    .
>
> When we purchased the house, we purchased the house new and were the first owners of same. During the period of time that we resided in the house, we did not alter, adjust, or change the garage door opening unit in any respect. When my wife or I pressed the manual button located in the garage, near the back door, the door opened and descended. The operating unit would not reverse when it descended upon an object. I don't know whether the unit would reverse or not after one or multiple uses, because we didn't use it much....
>
> When we sold the house to the Ablin's [sic] on November 5, 1986, the garage door opener was just like it was when we purchased the house, except for the fact that the remote control devices for use in an automobile would not activate the unit and were unusable....

Mr. Ablin stated in his affidavit in response to the motions for summary judgment:

> After we purchased the house on Ft. Stanwix, the garage door opener was not repaired, altered, changed, or tampered with and remained the same as when we purchased it. We did not use the garage door opener to [sic] often because we never used the garage for parking, but merely storage. The remote button by the garage door would activate the unit by lifting or closing the door, but it would not reverse the unit. Prior to Chris' death, I did not know that the garage door would not reverse when it struck an object while descending, or whether it exerted any force if it struck an object and stopped, because it never struck an object while descending that I knew about.

Dr. Philip D. Olivier, a physicist and electrical engineer, stated in his affidavit:

> [T]he removal of the unit does not cause any damage to the house itself and the garage door is completely usable without the opener in place. The bolts can be left in the holes after the unit is removed, causing no damage, unsightliness, structural weakness, or any need for repairs to the house....

TEX.CIV.PRAC. & REM. CODE ANN. § 16.009 (Vernon 1986), in pertinent part provides:

> (a) A claimant must bring suit for damages for a claim listed in Subsection (b) against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.
>
> (b) This section applies to suit for:
>
> .    .    .    .    .
>
> (3) wrongful death.

In order to sustain summary judgment, the appellate court must determine the pleadings and summary judgment evidence establish that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. *McFadden v. American United Life Insurance Co.,*

658 S.W.2d 147, 148 (Tex.1983). All evidence favorable to the non-movant is taken as true; every reasonable inference is indulged in favor of the non-movant, and any doubts are resolved in favor of the non-movant. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985).

■ The Ablins argue that the garage door opener at issue in this case is not an "improvement" because (1) it is easily removable and leaves no damage to the house or need for repairs after its removal; and (2) the garage door operates in the absence of an automatic opener. On the other hand, Morton Southwest and Overhead Door argue that the garage door opener is an "improvement" to real property because (1) it was an addition or betterment to real property and was intended to pass with the sale of the realty; (2) it is uncontroverted that the garage door opener did pass to the respective purchasers when the house at 5831 Ft. Stanwix was sold; and (3) the garage door opener was intended to be a permanent addition to the house itself.

The court in *Dubin v. Carrier Corp.*, 731 S.W.2d 651, 653 (Tex.App.—Houston [1st Dist.] 1987, no writ), defined the term "improvement" as:

... having 'broader signification than 'fixture' and comprehending all additions and betterments to the freehold.' *Cantrell v. Broadnax*, 306 S.W.2d 429, 432 (Tex.Civ.App.—Dallas 1957, no writ). The term includes everything that permanently enhances the value of the premises. *County of Nueces v. Salley*, 348 S.W.2d 397 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.)....

This court in *Salley*, cited in *Dubin, supra*, stated:

The phrase 'permanent improvements' means something done to or put on the land which the occupant cannot remove ... or, because in contemplation of law, it has been annexed to the soil and is therefore to be considered a part of the freehold.

348 S.W.2d at 400.

A garage door opener is similar to a fixture such as a garbage disposal unit. It is easily removable, but when it is attached to the sink and *intended* to remain permanently as a part of the building, it is a fixture, and, consequently, an improvement to realty. *First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 266–67 (Tex.1974); *McConnell v. Frost*, 45 S.W.2d 777, 780 (Tex.Civ.App.—Waco 1931, writ ref'd).

The Texas Supreme Court has determined that there are three factors used to ascertain whether personalty has become a permanent part of realty to which it is affixed. The three factors are:

(1) [T]he mode and sufficiency of annexation, either real or constructive;

(2) the adaptation of the article to the use or purpose of the realty; and

(3) the intention of the party who annexed the chattel to the realty.

*Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex. 1985). The Court in *Logan* stated that, of the three criteria, the third, dealing with the *intention of the party who does the annexing*, is preeminent; the other two factors are merely evidence of intent. *Id.* at 607.

There is no evidence in the record that the garage door opener was ever removed. The earnest money contract signed by Mr. and Mrs. Lyons specifically included the garage door opener. The earnest money contract signed by the Ablins also refers to the garage door opener. The deeds conveying the property did not exclude the garage door opener from the conveyance. The garage door opener was appropriate and necessary to the purpose for which it was installed. Because of its nature, and because it was specially adapted for the use to which it was put, and used by both vendees of the premises, it became an accessory necessary to the enjoyment of the freehold. The intention of all parties to this suit to make the garage door opener a permanent annexation to the freehold is conclusively shown by the summary judgment evidence. It is further conclusively shown by the summary judgment proof that neither Morton Southwest, Mr. and

Mrs. Lyons, nor the Ablins ever intended to remove the garage door opener, and that they intended that it remain affixed to the wall of the garage as part of the realty.

Morton Southwest and Overhead Door conclusively established by summary judgment proof that the garage door opener was affixed to the real property more than ten (10) years prior to the commencement of this lawsuit and that the garage door opener constituted an improvement to real property. Therefore, the claims asserted by the Ablins are barred by TEX.CIV. PRAC. & REM. CODE ANN. § 16.009 (Vernon 1986). The first and second points of error are overruled.

■ The Ablins contend in their third and final point of error that the trial court erred in granting summary judgment to Overhead Door because the summary judgment evidence "at least raised a fact question concerning whether Overhead Door was guilty of willful misconduct, or fraudulent concealment, as that term applies to Section 16.009(e)(3) of the Texas Civil Practice and Remedies Code." We do not agree.

The Ablins, among other allegations, in their response to Overhead Door's motion for summary judgment alleged: (1) breaches of warranties and damages under the Deceptive Trade Practices Act by both Morton Southwest and Overhead Door; (2) Morton Southwest ordered an "Alliance" brand garage door opener from Overhead Door for the house at 5831 Ft. Stanwix, but Overhead Door sold and installed a defective and dangerous "Relaytron" unit therein; and (3) that Overhead Door is excluded from relying on Section 16.009 as a defense because of the provisions of subsection (e)(3) of the statute.

The Ablins argue that the switching of the garage door opener constituted "willful conduct or fraudulent concealment." They assert that the affidavit and deposition testimony of Raymond Wells and the deposition testimony of Ray Wiley raise a fact issue concerning the alleged fraud.

Mr. Ray Wiley stated in his deposition: (1) he was in charge of purchasing materials and hiring subcontractors for Morton Southwest from 1972 until 1977; (2) Morton Southwest contracted with the sellers of garage door openers to install them; (3) he had no recollection that any supplier of overhead garage doors and door openers other than Overhead Door furnished and installed garage doors and door openers in any house in the Valley Forge Subdivision; (4) the overhead garage doors and openers were contracted for by "purchase order", which was issued by him; (5) he had never heard of a "Relaytron" garage door opener prior to the filing of this suit; (6) the majority of the overhead garage doors purchased by Morton Southwest from Overhead Door did not have door openers; and (7) "if you bought the home and wanted an operator (door opener) put on it, we would have Overhead [Door] put one on there for you. But it came through a sales supplement sheet."

Mr. Raymond Wells stated in his deposition: (1) several kinds of garage door openers were available to Morton Southwest from Overhead Door; (2) a "Relaytron" garage door opener was installed in a house at 5855 Ft. Stanwix; (3) when the construction of the houses in the Valley Forge Subdivision was completed by Morton Southwest, "they would have in them an automatic garage opener as part of the completed home package;" (4) a sales committee of Morton Southwest would decide whether an automatic garage door opener would be installed; (5) a potential homeowner did not have an option with reference to the garage door opener—"it was already in;" and (6) "the door operator which should have been in place at 5831 Ft. Stanwix should have been either an Alliance or an Overhead Door."

TEX.CIV.PRAC. & REM. CODE ANN. § 16.009(e)(3) (Vernon 1986) provides:

(e) This section does not bar an action:

.    .    .    .    .

(3) based on wilful misconduct or fraudulent concealment in connection with the performance of the construction or repair.

The elements of actionable fraud are:
(1) that a material representation was made; (2) that it was false; (3) that,

when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury ... Each of these elements must be established ..., and the absence of any one of them will prevent a recovery.

*Wilson v. Jones*, 45 S.W.2d 572, 573 (Tex. Comm'n App.1932, holding approved); *See Oilwell Division, United States Steel Corp. v. Fryer*, 493 S.W.2d 487, 491 (Tex. 1973).

"[C]onstructive fraud is the breach of some legal or equitable duty which ... the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964).

In the case at bar, there is no evidence of wilful, wanton or malicious conduct on the part of Overhead Door. It can be inferred from the deposition testimony of Mr. Wiley and Mr. Wells that Morton Southwest ordered an "Alliance" garage door opener from Overhead Door, and that the latter substituted a "Relaytron" unit therefor. The record before us does not contain a purchase order which shows that Morton Southwest ordered an "Alliance" unit from Overhead Door. While it is uncontroverted that the garage door opener in the Ablins' home on the day of the accident was a "Relaytron" unit, there is no direct evidence that the unit was actually installed by Overhead Door.

Assuming, *arguendo*, that Overhead Door actually installed the garage door opener in question, it did not owe a duty to Mr. and Mrs. Lyons, the original purchasers, or to the Ablins, the subsequent purchasers, to install an "Alliance" opener on the garage door. The summary judgment proof establishes that, at the time of installation of the opener, Mr. and Mrs. Lyons did not yet own the real property or improvements thereon. They had, at most, contracted for the purchase of the house

with Morton Southwest. The Earnest Money Contract between the Lyons and Morton Southwest referred to an "automatic garage door opener" only. There is no evidence in the record before this court that the original purchasers ever requested a specific brand of garage door opener, nor was there evidence of any dealings between them and any installer, including Overhead Door, in this regard. Therefore, any contractual rights, duties owed, decisions or choices to be made as to brand of garage door opener were between Morton Southwest and the installer, and not between the installer and the original purchasers. In order to prove either fraud or wilful misconduct to negate application of Section 16.009, it was incumbent upon the Ablins to prove that Overhead Door owed them a requisite legal duty and that it breached same. They did not meet that burden. There was no relationship, contractual or otherwise, between the Ablins and Overhead Door.

■ The mere substitution of a "Relaytron" unit for an "Alliance" unit in no way raises a fact issue of fraudulent concealment or wilful misconduct by Overhead Door. As already noted, although there is evidence that as between Morton Southwest and Overhead Door an "Alliance" was the expected brand, the installation of the "Relaytron" was never hidden, concealed, or questioned at the time of installation, or at any time thereafter. The opener was visible to all parties to view at all times. The record is devoid of any evidence that Morton Southwest and any installer, including Overhead Door, entered into a binding obligation for installation of a specific brand of garage door opener at 5831 Ft. Stanwix. The fact that Overhead Door installed a different brand than Morton Southwest specified is not evidence of fraud or wilful misconduct on the part of Overhead Door as to the Ablins.

There is no genuine issue of fact as to the alleged fraud committed by Overhead Door. Any cause of action which Morton Southwest may have had against Overhead Door does not extend to the Ablins. *See Hart v. Aetna Casualty and Surety Co.*,

756 S.W.2d 27, 28 (Tex.App.—Amarillo 1988, no writ). The Ablins, under the uncontroverted facts, do not have a cause of action for fraud against Overhead Door. The third point of error is overruled.

The judgment of the trial court is affirmed.