IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00280-CV

 

Brian H. Akin, Individually 

and on Behalf of the Estate 

of Ted Akin, Deceased,

                                                                      Appellant

 v.

 

Bally Total Fitness Corporation,

                                                                      Appellee

 

 



From the 17th District Court

Tarrant County, Texas

Trial Court No. 17-201031-03

 



MEMORANDUM  Opinion










 

      Akin’s father drowned in the
swimming pool at Bally’s health club.  Akin brought wrongful death and survival
actions against Bally for ordinary negligence, gross negligence, violations of
the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), premises
liability, fraud, and breach of contract.  See Tex. Bus. & Comm. Code Ann. §§ 17.41-17.63 (Vernon
2002 & Supp. 2006).  The trial court rendered summary judgment in favor of
Bally.  Akin appeals.  We affirm in part, and reverse and remand in part.

      In four issues, Akin contends
that the trial court erred in granting Bally’s motion for summary judgment. 
Akin states his issues as follows:

        1.       Waiver
and Release purportedly signed by the Decedent;

        2.       Fair
Notice of the Waiver and Release to the Decedent;

        3.       Admission
of Akin of the validity of the membership contract as a result of his pleadings
filed in the matter;

        3.[sic] Damages.

(Br. at 2.)  

      In a traditional
summary-judgment motion, “[t]he judgment sought shall be rendered forthwith if”
the summary-judgment evidence “show[s] that . . . there is no genuine
issue as to any material fact and the moving party is entitled to judgment as a
matter of law . . . .”  Tex.
R. Civ. P. 166a(c); see Sw. Elec. Power Co. v. Grant, 73 S.W.3d
211, 215 (Tex. 2002).  “When reviewing a summary judgment, we take as true all
competent evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant’s favor.”  Diversicare
Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005); accord
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).  “We
review the trial court’s summary judgment de novo.”  See Tittizer v. Union
Gas Corp., 171 S.W.3d 857, 860 (Tex. 2005) (per curiam); Provident Life
& Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003); Phillips
v. Ivy, 160 S.W.3d 91, 94 (Tex. App.—Waco 2004, pet. denied).

      Release.  In
Akin’s Issues Nos. 1 and 2, he complains concerning a release provision in the health-club
membership agreement between Bally and Akin’s father, in which Akin’s father
agreed to release Bally from liability for Bally’s negligence.

      “[R]eleasing ‘a party in
advance of liability for its own negligence’” constitutes “an extraordinary shifting
of risk.”  Storage & Processors, Inc. v. Reyes, 134 S.W.3d 190, 193
(Tex. 2004) (quoting Dresser Indus., Inc. v. Page Petroleum, Inc., 853
S.W.2d 505, 507 (Tex. 1993)).  Such “extraordinary risk-shifting clauses must
meet certain fair notice requirements.”  Green Int’l, Inc. v. Solis, 951
S.W.2d 384, 386 (Tex. 1997) (citing Dresser Indus., 853 S.W.2d at
508); accord Storage & Processors at 192.  One fair-notice
“requirement, of conspicuousness, mandates ‘that something must appear on the
face of the [contract] to attract the attention of a reasonable person when he
looks at it.’”  Storage & Processors at 192 (quoting Dresser
Indus., 853 S.W.2d at 508) (alteration in Storage &
Processors); see Tex. Bus.
& Comm. Code Ann. § 1.201(b)(10) (Vernon 2006) (defining
“conspicuous”).  “Language may satisfy the conspicuousness requirement by
appearing in larger type, contrasting colors, or otherwise calling attention to
itself.”  Storage & Processors at 192 (citing Littlefield v.
Schaefer, 955 S.W.2d 272, 274-75 (Tex. 1997)); see Dresser Indus., 853
S.W.2d at 511.    

      Bally moved for summary
judgment on Akin’s negligence claims on the ground of the release.  Akin argues
that the release clause was not conspicuous, but was “camouflage[d]” by being
placed on the back of the contract, on the same page with twenty other
provisions, all beginning with a heading in all capital letters and bold face,
parts of the body of those other provisions also being in all capital letters
or in bold face.  (Br. at 6.)  Bally points out that the whole of the release
clause appears in bold type, is the only paragraph enclosed by a box, and is
expressly referenced by paragraph number just above the signature line.  The
release clause also appears in part in larger type.  The release clause was
conspicuous.  The trial court did not err in granting Bally’s summary-judgment
ground on Akin’s negligence claim.  We overrule Akin’s Issues Nos. 1 and 2.

      Judicial Admissions. 
In Akin’s first Issue No. 3, he assigns error as to the “[a]dmission of
Akin of the validity of the membership contract as a result of his pleadings
filed in the matter.”  (Br. at 2.)

      The appellant’s “brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.”  Tex.
R. App. P. 38.1(h).   A brief’s issues that do not contain such argument
“are inadequately briefed and present nothing for review.”  Batto v.
Gafford, 119 S.W.3d 346, 350 (Tex. App.—Waco 2003, no pet.); see
Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex.
1994); In re H.E.L., No. 10-04-00204-CV, 2005 Tex. App. LEXIS 609, *1-*2
(Tex. App.—Waco Jan. 26, 2005, no pet.) (mem. op.).

      Akin’s
briefing on the issue is as follows, in its entirety:

      Bally alleges that Akin admitted the
validity of the membership Contract in his pleadings filed with the Court. 
Akin denies that as a matter of law he has judicially admitted the validity of
the membership contract in as much as mere pleadings in the alternative and
even apparent inconsistent or contradictory pleadings have never served as
judicial admissions.

([sic] Br. at 5.)  Akin inadequately
briefs the issue of his judicial admissions.  We overrule Akin’s first Issue
No. 3.  

      Damages. 
Akin’s second Issue No. 3 concerns “[d]amages.”  (Br. at 2.)  We understand the
issue to include Akin’s arguments concerning his gross-negligence claim, for
which he may seek exemplary damages, and his DTPA claim, for which he may seek
treble damages.  See Tex. Civ.
Prac. & Rem. Code Ann. § 41.003(a)(3) (Vernon Supp. 2006); Tex. Bus. & 
Comm. Code Ann. § 17.50(b), (h) (Vernon Supp. 2006).  

      Gross Negligence.  In
Bally’s motion for summary judgment, Bally contended that the release barred
Akin’s claim for gross negligence as well as for negligence.  “[G]ross
negligence involves two components:” 

(1)  viewed
objectively from the actor’s standpoint, the act or omission complained of must
involve an extreme degree of risk, considering the probability and magnitude of
the potential harm to others; and 

(2)  the actor must have actual,
subjective awareness of the risk involved, but nevertheless proceed in
conscious indifference to the rights, safety, or welfare of others.

Lee Lewis Constr., Inc. v.
Harrison, 70 S.W.3d 778, 785 (Tex. 2001); accord Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994).

What lifts ordinary negligence into gross
negligence is the mental attitude of the defendant; that is what justifies the
penal nature of the imposition of exemplary damages.  The plaintiff must show
that the defendant was consciously, i.e., knowingly, indifferent to his rights,
welfare and safety.  In other words, the plaintiff must show that the defendant
knew about the peril, but his acts or omissions demonstrated that he didn’t
care.

Burks Royalty Co. v. Walls, 616 S.W.2d 911, 922 (Tex. 1981).  

      Bally has defeated the
negligence claim by proving a defense of release; Bally has not negated any
element of negligence or gross negligence.  The negligence release does not
prevent proof of gross negligence.[1]  See Tex.
Civ. Prac. & Rem. Code Ann. § 41.003(b) (Vernon Supp. 2006); Newman
v. Tropical Visions, Inc., 891 S.W.2d 713, 723 (Tex. App.—San Antonio 1994,
writ denied) (Chapa, C.J., concurring in part & dissenting in part).  The
trial court erred in sustaining the ground in Bally’s summary-judgment motion
alleging that the

release barred damages for gross
negligence.[2]

      DTPA.  In Bally’s
motion for summary judgment, it moved for judgment on Akin’s DTPA cause of
action on the ground that the DTPA barred Akin’s claims for damages for death,
bodily injury, and the infliction of mental anguish.  

      The DTPA does not “apply to a
cause of action for bodily injury or death or for the infliction of mental
anguish,” “[e]xcept as specifically provided by Subsections (b) and (h),
Section 17.50.”  Tex. Bus. & Comm.
Code Ann. § 17.49(e) (Vernon Supp. 2006); see id.
§ 17.50 (Vernon Supp. 2006); see generally Teel Bivins et al., The
1995 Revisions to the DTPA: Altering the Landscape, 27 Tex. Tech. L. Rev. 1441, 1448 (1996). 
Section 17.50, in turn, provides, in relevant part:

      (a)   A consumer may maintain an action
where any of the following constitute a producing cause of economic damages or
damages for mental anguish:

     . . .

      (2)  breach of an express or
implied warranty; [or]

      (3)  any unconscionable action or course
of action by any person . . . .

      (b)  In a suit filed under this section,
each consumer who prevails may obtain:

      (1)  the amount of economic
damages found by the trier of fact.  If the trier of fact finds that the conduct
of the defendant was committed knowingly, the consumer may also recover damages
for mental anguish, as found by the trier of fact, and the trier of fact may
award not more than three times the amount of economic damages; or if the trier
of fact finds the conduct was committed intentionally, the consumer may recover
damages for mental anguish, as found by the trier of fact, and the trier of
fact may award not more than three times the amount of damages for mental
anguish and economic damages;

      . . . .

      (h)  Notwithstanding any other provision
of th[e DTPA], if a claimant is granted the right to bring a cause of action
under th[e DTPA] by another law, the claimant is not limited to recovery of
economic damages only, but may recover any actual damages incurred by the
claimant, without regard to whether the conduct of the defendant was committed
intentionally.  . . . .  In applying Subsection (b)(1) to an
award of damages under this subsection, the trier of fact is authorized to
award a total of not more than three times actual damages, in accordance with
that subsection.

Tex. Bus.
& Comm. Code Ann. § 17.50.

      Akin pleaded, for example, for
damages for lost wages and mental anguish resulting from the breach of an
implied warranty and unconscionable action or course of action by Bally.  Those
claims fall within the exceptions to the DTPA’s bar on claims under the DTPA
for damages for death, bodily injury, and mental anguish.  The trial court
erred in sustaining the ground in Bally’s summary-judgment motion alleging that
the DTPA barred all of Akin’s DTPA claims.  

      Having found that the trial
court erred under both arguments in Akin’s second issue No. 3, we sustain
that issue.

      Conclusion.  Akin does not
challenge Bally’s other grounds for summary judgment on Akin’s other causes of
action.  Having overruled Akin’s Issues Nos. 1 and 2, and first Issue No. 3,
and having sustained his second Issue No. 3, we reverse and remand as to gross
negligence and the DTPA, and otherwise affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

      Justice Vance, and

      Justice Reyna

Affirmed in part, reversed and remanded in part

Opinion delivered and filed February 14, 2007

[CV06]









                [1] Most courts hold that pre-injury waivers of gross negligence are
void as against public policy.  Tex. Moto-Plex, Inc. v. Phelps, No.
11-03-00336-CV, 2006 Tex. App. LEXIS 892, at *4 (Tex. App.—Eastland Feb. 2,
2006, no pet.) (mem. op.); accord Keszler v. Mem’l Med. Ctr., 931 S.W.2d
61, 63 (Tex. App.—Beaumont 1996), rev’d on other grounds, 943 S.W.2d 433
(Tex. 1997) (per curiam); Rosen v. Nat’l Hot Rod Ass’n, No.
14-94-00775-CV, 1995 Tex. App. LEXIS 3225, at *20 (Tex. App.—Houston [14th
Dist.] Dec. 21, 1995, writ denied) (not designated for publication);  Smith
v. Golden Triangle Raceway, 708 S.W.2d 574, 576 (Tex. App.—Beaumont 1986,
no writ); see Mem’l Med. Ctr. v. Keszler, 943 S.W.2d 433, 435 (Tex.
1997) (per curiam); Sydlik v. REEIII, Inc., 195 S.W.3d 329, 336 (Tex.
App.—Houston [14th Dist.] 2006, no pet.); Restatement
(2d) of Contracts § 195 (1981); but see Tesoro Petroleum
Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 127 (Tex. App.—Houston
[1st Dist.] 2002, pet. denied); Newman v. Tropical Visions, Inc., 891
S.W.2d 713, 721-22 (Tex. App.—San Antonio 1994, writ denied).  We do not
believe that the First Court of Appeals appreciated the limitations on the San Antonio Court’s holding.  See Tesoro Petroleum at 127; cf. Newman at
721-22.





            [2] Our very narrow holding
is that the release in this case does not release a claim for gross
negligence.  We do not express any opinion as to whether, in the context of
this appeal of a summary judgment, Akin properly pleaded gross negligence. 
Nor, because this is not an appeal of a no-evidence motion for summary
judgment, do we express any opinion as to whether the record contains any
evidence of any of the elements of negligence (other than duty), or of gross
negligence’s elements of extreme risk or actual awareness.  We hold only that
on this record from a traditional motion for summary judgment, Bally did not
affirmatively attempt to negate the elements of gross negligence and did not
conclusively prove all the elements of a defense to gross negligence.








hat the designer and manufacturer of component parts of a product are protected by
the statute. Id. at 724. 
      The court of appeals rejected Eaton's attempt to narrow the controlling question to whether
the statute protected manufacturers of component parts. Instead, the court posed and answered
the controlling issue this way:
The question squarely before us is whether materialmen come within the statutory
language of article 5536a, § 2, supra. We answer the question in the negative. Section 2 of
article 5536a, supra, protects "any person performing or furnishing construction or repair of
any such improvement [to realty]." Under the statutory language, a materialman who does
no more than manufacture or supply materials does not benefit from the statute. . . . For the
reasons stated, we hold that component part manufacturers are not protected by section 2 of
article 5536a, supra.

Id. (emphasis added). The court noted that Ellerbe had expressly left open the question "whether
materialmen come within the statutory language." Id. (quoting Ellerbe, 618 S.W.2d at 873).
      The court in Reddix defined a "materialman" as follows:
A materialman in Texas case law has been defined as a person who does not engage in the
business of building or contracting to build homes for others, but who manufactures,
purchases or keeps for sale materials which enter into buildings and who sells or furnishes
such material without performing any work or labor in installing or putting them in place.
  
Reddix, 662 S.W.2d at 724 (citing Huddleston v. Nislar, 72 S.W.2d 959, 962 (Tex. Civ.
App.—Amarillo 1934, writ ref'd) (emphasis added by the Reddix court)). 
      After stating the controlling question and answering it in the same paragraph—"[A]
materialman who does no more than manufacture or supply materials does not benefit from the
statute"—the court in the very next sentence inexplicably stated its holding this way: "For the
reasons stated, we hold that component part manufacturers are not protected by section 2 of article
5536a." Reddix, 662 S.W.2d at 724. Stating the holding in this manner leaves the impression that
the rationale for denying Eaton Corporation repose was not that it was a materialman but was
because it had manufactured only a component part of the elevator. Of course, the only "reasons
stated" by the court in advance of its holding were that a materialman is not covered by the statute.
      Considering the definition of materialman, the only rationale for disqualifying Eaton
Corporation from protection under the statute was its failure to install the elevator on the realty,
not because it had only manufactured a component part. Any other conclusion would make the
definition of materialman superfluous and ignore the controlling question posed by the court. 
Accordingly, we interpret the holding in Reddix as being based on the only rationale that makes
sense under the definition. A materialman does not construct an improvement to realty; Eaton
Corporation was a materialman; therefore, Eaton was excluded from the statute's coverage.
Conkle v. Builders Concrete Products
      Douglas Conkle died in the bottom of a bin that was part of a concrete batch plant. His family
sued Dillon Steel, the manufacturer of the bin, but the trial court granted a summary judgment for
Dillon Steel based on the statute of repose. Conkel, 749 S.W.2d at 490. The court of appeals
affirmed in an unpublished opinion. However, the Supreme Court in a per curiam opinion, and
without hearing oral argument, reversed the summary judgment because Dillon Steel "failed to
establish as a matter of law that [it] constructed an improvement to real property as provided for
in . . . § 16.009." Id. There was evidence, the Court noted, that the batch plant was portable. 
Id. at 491.
      If the Supreme Court had stopped with its explanation at that point, the rationale for its
holding would have been clear. Dillon Steel had failed to meet a statutory prerequisite—i.e., the
batch plant was portable and thus did not qualify as an improvement to realty. Unfortunately,
however, the Court clouded its rationale by also mentioning that a fact question existed whether
Dillon had manufactured the entire batch plant or only a component part. Id. The court of appeals
had relied on Ellerbe in affirming the summary judgment in favor of Dillon Steel. Id. However,
the Supreme Court distinguished Ellerbe from the facts before it by recognizing that in Ellerbe
Otis Elevator had manufactured the entire unit, not just a component part. Id.
      Moreover, the Supreme Court cited Reddix for this legal proposition: "Manufacturers of
component parts do not come within the statutory language of section 16.009." Id. By choosing
this erroneous rationale from Reddix, the Court necessarily leaves the impression in Conkle that
Dillon Steel was also denied repose because it had not manufactured the entire batch plant. As
discussed above, we consider the true rationale in Reddix to be that the manufacturer was a
materialman and thus had not constructed an improvement to realty.
      What does Conkle mean and what is its binding effect as precedent? The Supreme Court
reversed the summary judgment because the manufacturer failed to conclusively establish that it
had "constructed an improvement to real property as provided for in . . . § 16.009." Id. at 490. 
Thus, the reason given for reversing the summary judgment is consistent with a basic requirement
of the statute, i.e., the defendant must construct or repair an improvement to realty. We interpret
the decision in Conkle as being entirely consistent with the requirements of the statute and with
the legislative intent expressed in its language. We do not interpret Conkle as explicitly or
implicitly holding that the manufacturer of a product is protected by the statute of repose even
though it does not install the product on the realty. Unlike the Fifth Circuit in Dedmon, we do not
consider the Texas Supreme Court as having adopted the so-called "product-oriented approach"
in Conkle. See Dedmon, 950 F.2d at 249, 250. Consequently, we do not believe the Supreme
Court has already decided the issue before us.
TEXAS AUTHORITY
      We decline to follow the decisions in Ellerbe, 618 S.W.2d 870, Dubin I, 731 S.W.2d 651,
Rodarte, 786 S.W.2d 94, and Dubin II, 798 S.W.2d 1, because they are contrary to legislative
intent and ignore the statutory requirement that the defendant seeking repose must have
constructed or repaired an improvement to realty. These decisions grant the manufacturer repose
if it does nothing more than furnish the construction of personalty. Moreover, they mistakenly
equate the construction of personalty—i.e., the elevator, the heater, or an air conditioning
unit—with the construction of an improvement to realty. In short, they make constructors of an
improvement to real property out of materialmen who do nothing more than supply personalty.
      We believe instead that the definition of materialmen in Reddix, 662 S.W.2d at 724, which
treats every manufacturer as a materialman unless it installs the product on the realty, provides
the correct basis for determining coverage under section 16.009. Consequently, whether a
defendant manufactures all or only a component part of a product is immaterial in determining
coverage. Rather, the crucial inquiry under the definition of materialman is whether the
manufacturer actually installed the product on the realty—i.e., whether the manufacturer actually
constructs an improvement to realty as the statute requires. We consider Ablin, 802 S.W.2d 788,
which granted repose to the manufacturer of an automatic garage-door opener who installed it, to
be consistent with legislative intent and the requirements of section 16.009.
DISPOSITION
      U.S. Natural Resources had manufactured the heating furnace but did not install it. Based on
our analysis of legislative intent, the requirements of section 16.009, and relevant authority, we
hold that U.S. Natural Resources is not protected by the statute of repose as a matter of law. 
Thus, the court erred when it granted the summary judgment on that ground. We sustain point
one, reverse the summary judgment, and remand the cause for a trial. We do not reach the
remaining points. 
 
                                                                                     BOB L. THOMAS
                                                                                     Chief Justice
Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
(Justice Vance concurring)
Reversed and remanded
Opinion delivered and filed September 15, 1993
Publish