**H. L. SAMPSON, Appellant,**

**v.**

**W. E. SCOTT, Jr., et al., Appellees.**

No. 15940.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 31, 1958.

Rehearing Denied Nov. 28, 1958.

Sanders, Masters & Watson, and H. W. Sanders, Wichita Falls, for appellant.

T. B. Coffield, Bowie, for appellees.

MASSEY, Chief Justice.

This is an appeal from a "take nothing" judgment in a trespass to try title case, coupled with appellee's cross-assignment of error because of the appointment of a receiver for the mineral estate. We are presented with a motion to dismiss the appeal, which we have overruled, as hereinafter noted.

Motion to dismiss appeal overruled, judgment affirmed, but order appointing receiver reversed and rendered.

Plaintiff in the trial court was H. L. Sampson. Without necessity for explanation, it is to be noted that he had succeeded

to all the right, title and interest in and to the property in controversy which formerly belonged to R. F. Sampson, deceased. In so far as the surface of the property was concerned, the defendants disclaimed, and no issue is presented thereupon. In so far as one-eleventh (1/11th) of the mineral estate under the surface was concerned, stipulations made during the course of trial established circumstances which, in view of other facts proved, supported judgment necessarily establishing an ownership in plaintiff as a tenant-in-common with the defendants.

A Texas corporation, now defunct, was chartered in 1901. Its right to do business was forfeited in 1906 for failure to pay franchise taxes. Its charter was forfeited in 1951 pursuant to the provisions of Vernon's Ann.T.S., Art. 7092a, "Forfeiture upon failure to revive right to do business." The Corporation was the Mutual Union Oil & Asphalt Company. Its original charter was for fifty years with authorized capital stock of 150,000 shares of $1 par value each. Attached to the Articles of Incorporation was an affidavit reciting that more than 50% of the authorized capital stock had been in good faith subscribed and that 10% of its authorized capital stock had been paid. This record was placed in evidence. No evidence appears in the record indicative that R. F. Sampson was in any way connected with the Corporation at the time. About a year later, however, R. F. Sampson conveyed all of the minerals under the lands in question to the Corporation in exchange for one-eleventh (1/11th) of the Corporation's authorized capital stock, plus the assumption of a $600 indebtedness Sampson owed on the land.

During the course of the trial, the plaintiff testified that one W. E. Scott, a First Year Director of the Mutual Union Oil & Asphalt Company, paid the $600 debt which was assumed by said Corporation. Several of the defendants in the suit were the heirs of W. E. Scott, now deceased, and these persons will be hereinafter referred to as the Scott Heirs. They succeeded to the interest, if any, of W. E. Scott.

The only evidence in the record concerning any specific stock which was issued by the Mutual Union Oil & Asphalt Company was that showing one-eleventh (1/11th) going to R. F. Sampson. Plaintiff introduced this evidence. It seems that following the death of R. F. Sampson in 1935, plaintiff destroyed voluminous records of the deceased in the belief that they were valueless. Included in these records were four books of stock certificates of the Corporation in question. Three of the books had all the blank certificates intact, just as they came from the printers. The fourth book contained some blank certificates and also contained stubs accounting for some certificates which had been issued. The stubs in question showed that the matching certificates had been issued to R. F. Sampson. There was no evidence introduced contradictory to the above. Plaintiff contends that the evidence indisputably establishes that the stock (1/11th) was the first and only stock issued by the Corporation; that no stock was subsequently issued; and that the only asset ever owned by the Corporation, in cash or in property, was the minerals under the land which was conveyed to the Corporation by R. F. Sampson in exchange for stock. We will state at this point that we do not agree. The trial judge, as the trier of the fact, was certainly not compelled to reach such conclusions even under an assumption that the evidence introduced by the plaintiff was to be accorded absolute verity. Furthermore, he was not obliged to believe the testimony.

In addition to the Scott Heirs, plaintiff sued by his original petition "the unknown stockholders of Mutual Union Oil and Asphalt Company, a defunct corporation, and their unknown heirs and legal representatives." An attorney ad litem was appointed to represent them. Following trial on the merits, a judgment was entered finding that title to the surface of the lands in question and an undivided one-eleventh (1/11th)

of the minerals in and under the same was vested in the plaintiff, but that plaintiff "take nothing" as against defendants as to an undivided ten-elevenths ($^{10}/_{11}$th) of the minerals in and under said lands. This judgment was entered on February 7, 1958. Thereafter, on February 28, 1958, the plaintiff filed a motion to vacate and set aside the judgment so rendered, and in the alternative for the appointment of a receiver to take charge of the minerals under the lands in question. The motion was not verified. On the day said motion was filed the trial court entered an order extending the December, 1957 term of court until April 1, 1958, for the purpose of hearing, considering, passing on and disposing of the motions and applications for the appointment of a receiver. Thereafter, on March 7, 1958, plaintiff filed an amended motion to set aside the judgment of February 7 and in the alternative for the appointment of a receiver. On the same date, March 7, 1958, a new judgment was entered in the cause. Though stating that he overruled the plaintiff's motion, in regard to vacating, setting aside, and holding for naught the judgment entered on February 7, 1958, the court proceeded to enter a judgment, the order and decree of which did vacate, set aside and hold for naught the aforesaid judgment, entering in its stead "a reformed and new Judgment" which actually repeated everything that had been decreed in the former judgment, plus an order appointing a receiver to take charge of the mineral estate and directing him to make and execute an oil, gas and mineral lease thereof subject to the approval of the court.

In connection with the appeal, the Scott Heirs (defendants below, appellees here) moved for a dismissal on the ground that the judgment appealed from was merely a reentry of the same judgment which was entered on Februray 7, with the additional provision of appointment of a receiver. Further, that since the bond purporting to support the appeal was filed fifty-seven days after the entry of judgment on February 7, it was too late to constitute a proper foundation for an appeal therefrom and that said judgment had become final.

■ We overrule the motion to dismiss the appeal. The trial court had absolute control over the case on the date the judgment of March 7 was entered. Included among its powers within the 30-day period following the entry of the judgment of February 7 was that of vacating such judgment. Having been expressly vacated it never became final. The fact that the judgment entered on March 7 repeated the provisions of the former in relation to the plaintiff's suit in trespass to try title would not be a factor for consideration. The former having been set aside, the cause stood precisely as if there had been no judgment, therefore the latter judgment entered, jurisdiction having been preserved for its entry, is to be viewed as the only judgment entered in the case.

■ On the merits of plaintiff's appeal, we see no valid reason for a reversal of the judgment in respect to the suit in trespass to try title. When the Mutual Union Oil & Asphalt Company became defunct all the mineral interest in and under the land in question passed to the stockholders jointly. The property of a defunct corporation, subject to the rights of its creditors, rests in all its stockholders, in proportion to the amount of stock held by each. 11-A Tex.Jur., p. 108, "Corporations," sec. 672, "Shareholders' Rights and Liabilities." Regardless of the number of shares of stock outstanding, plaintiff's proportionate interest in the assets of the Corporation, under the evidence, was one-eleventh ($^{1}/_{11}$th). That his percentage was greater than this was not conclusively established. It has long been settled that a plaintiff in trespass to try title must recover upon the strength of its own title and not on the weakness of the title of his adversary. As to the remaining ten-elevenths ($^{10}/_{11}$ths) undivided mineral interest, it could not be said that plaintiff's evidence compelled the entry of a

judgment for him. True, it is that the trial court could have found for plaintiff under the evidence, but he was not compelled to do so. In view of the state of the record, his failure to do so did not constitute any abuse of the discretion lodged with him as the trier of both the law and the facts.

The judgment as related to the suit in trespass to try title is affirmed.

■ By a cross-point on appeal, the defendants Scott Heirs seek to set aside the order entered below appointing a receiver. We are of the opinion that the law is with said defendants. As heretofore noted, the applications for receivership, original and amended, were not verified by any affidavit. Neither was there any evidence introduced in support of the allegations about the necessity for such appointment after the applications were filed. In oral presentation on the appeal, the attorney for the plaintiff contended that the trial court had the right to consider the evidence previously heard upon the trial of the merits on the trespass to try title issue. We agree. But when we advert to the statement of facts, it is to be noted that no part of the evidence introduced relates to the question of whether the mineral estate under the lands in question is in danger of being lost, removed or materially injured. Therefore, we have the appointment of a receiver where no evidence in the record supports the necessary finding that the property or fund over which the receiver is appointed is exposed to such a hazard. We have once before had a question of this nature before us. See Whitson Co. v. Bluff Creek Oil Co., Tex.Civ.App., Fort Worth, 1953, 256 S.W. 2d 1012, writ dismissed. Under the authorities there noted, a decree appointing a receiver was reversed. We believe a like ruling is indicated under the state of the record before us.

The judgment in respect to the appointment of a receiver is reversed and rendered.