**J.S. LOGAN, Jr., Petitioner,**

v.

**J.A. MULLIS, and Wife, Martha Mullis, Respondents.**

No. C–3313.

Supreme Court of Texas.

March 13, 1985.

Hubbard, Patton, Peek, Haltom & Roberts, Donald W. Capshaw, Texarkana, for petitioner.

Atchley, Russell, Waldrop & Hlavinka, Norman C. Russell, Texarkana, for respondents.

GONZALEZ, Justice.

This is a suit for damages and an injunction for interference with an easement. After a jury trial, the trial court rendered judgment for defendant, J.S. Logan, Jr. In an unpublished opinion, the court of appeals reversed and rendered judgment for plaintiffs, J.A. and Martha Mullis. We affirm.

In 1977, Logan owned a tract of land which was landlocked. He purchased a roadway easement from James and Carolyn Ashford, the owners of adjoining property. The easement crossed the Ashfords' property to a public road. The easement provided that:

The right of way, easement, rights and privileges herein granted shall be used only for the purpose of providing pedestrian and vehicular ingress and egress between the paved highway lying West of the Grantors' property mentioned above and the property of Grantee which adjoins the property of Grantors to the East.

It is agreed that the Grantee will build a fence along one side of the said easement as agreed with the Grantors, and further that the Grantors, their heirs and assigns, and the agents, invitees and guests of the Grantors, their heirs or assigns may also use the road way built and to be built by the Grantee.

Logan subsequently constructed a gravel road over the easement. Because a creek intersected the easement, he built a culvert beneath the road at that point. The culvert was constructed by cutting both ends off of a railroad tank car and putting it in the creek bed. When the culvert was completed, the gravel road was extended over it.

Later the same year that Logan obtained his easement, the Mullises purchased 18½ acres of land from the Ashfords, subject to and including the Logan easement. Several years later, Logan acquired another highway access by purchasing the remainder of the Ashford property. Since he no longer needed the easement across the Mullis tract, Logan sent a letter to the Mullises informing them that "[y]ou will not use my road easement again unless you put it in yourself. Please be so advised and no matter what." Logan thereafter removed the metal culvert from the Mullises' property, destroyed part of the fence along the roadway, and piled dirt across the road to make it impassable.

The Mullises sued Logan for damages and injunctive relief. After a hearing, Logan was ordered to, within ninety days, replace the culvert, remove the obstructions placed across the easement and restore approximately 200 feet of fence which he tore down while removing the culvert. When he failed to comply, a motion for contempt of court was filed. Lo-

gan died before the motion was heard, and the suit for damages continued against his estate.

At trial, only special issues on damages were submitted to the jury. The jury found that: (1) the reasonable cost necessary to put the roadway in the condition in which it was immediately before Logan removed the culvert was $4,000; (2) the Mullises had suffered damages as a result of the removal of the culvert; and (3) the reasonable value of the loss of use of the property was $900.

The trial court initially rendered judgment for the Mullises in accordance with the jury verdict. Thereafter, Logan filed timely motions for new trial, for judgment N.O.V. and to vacate the judgment. The trial court vacated its original judgment and rendered a take nothing judgment in Logan's favor. At the Mullises' request, the trial court filed findings of fact and a conclusion of law that the culvert was not a fixture and that therefore, Logan had a right to remove it without incurring liability.

The essential liability issue was whether the culvert was permanently attached to the realty. If it retained its character as personalty, Logan was free to remove it when he abandoned the easement. If the culvert was a fixture, Logan had no right to remove it and subjected himself to liability for damages for its removal.

Three factors are relevant in determining whether personalty has become a fixture, that is, a permanent part of the realty to which it is affixed: (1) the mode and sufficiency of annexation, either real or constructive; (2) the adaptation of the article to the use or purpose of the realty; and (3) the intention of the party who annexed the chattel to the realty. *O'Neal v. Quilter*, 111 Tex. 345, 234 S.W. 528, 529 (1921), *Fenlon v. Jaffee*, 553 S.W.2d 422, 428 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). The third criterion dealing with intention is preeminent, whereas the first and second criteria constitute evidence of intention. *Fenlon v. Jaffee*, 553 S.W.2d at

428; *Hutchins v. Masterson,* 46 Tex. 551, 554 (1887).

Intent is made apparent by objective manifestations. *Citizens' National Bank of Abilene v. Elk Mfg. Co.,* 29 S.W.2d 1062, 1065 (Tex.Comm'n App.1930, judgmt adopted). *See also City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). As a general rule, intent is a question of fact to be decided by the jury. However, even testimony of intention that the chattel was not meant to become a fixture will not prevail in the face of undisputed evidence to the contrary. *See Ruby v. Cambridge Fire Ins. Co.,* 358 S.W.2d 943, 946 (Tex.Civ.App. —Dallas 1962, no writ). Where reasonable minds cannot differ, the issue is one of law rather than one of fact. *See Exchange Savings & Loan Association v. Monocrete Pty. Ltd.,* 629 S.W.2d 34, 37 (Tex.1982) when this court in effect held that cement roofing tiles affixed to a dwelling were fixtures as a matter of law for purposes of determining lien priorities under TEX.REV. CIV.STAT.ANN. art. 5459.

In this case, the intention to make the tank car a fixture is conclusively established by Logan's conduct at the time he built the culvert. The manner in which he affixed the tank car to the realty, the circumstances surrounding the building and eventual destruction of the culvert, and the adaptability of the culvert to the peculiar topography of the land are all prime evidence of intention. Logan began construction by packing some substance (either clay or gravel) on the creek bed to prevent water from washing underneath the tank. After the tank car was in place, Logan used dirt, cement and wood pilings to pack it. He also built retaining walls around the culvert. After the tank was buried, he laid a gravel road on top of it. The tank was thus embedded in the road so that a vehicle could cross over it.

The manner in which the tank car was affixed to the realty is further evidenced by the difficulty Logan had in removing it once it was embedded. Logan testified that he used several large winch trucks to hoist the tank car out of the creek. In the process, he excavated the gravel and removed the wood and concrete surrounding the tank car. Once the culvert was destroyed, the road was impassable and the stream eroded the creek banks considerably.

The purpose for which the annexation was made sheds further light on the issue of intent. In this case, it is undisputed that Logan's property was completely landlocked when he acquired the easement. He had no other prospects of obtaining access to a public road at that time. However, the easement was useless as a means of ingress and egress unless the creek intersecting it could be spanned. For that reason, Logan constructed the culvert.

Counsel for Logan's estate stipulated that Logan had abandoned the easement. He was free to do so. Yet, his right to abandon the easement did not vest him with authority to destroy the roadway and thereby prevent others from taking advantage of the benefits to which they were legally entitled, both by the easement grant itself and by their rights as owners of the freehold estate.

The status of the culvert as a permanent accession to realty was not altered simply because Logan opted to abandon the easement. Once the tank car was affixed in the manner that it was, it became a part of the fee estate. Logan was therefore liable for its removal.

The Mullises contended before the court of appeals that the trial court's findings of fact and conclusion of law that the culvert was not a fixture were erroneous. They assert that there was no evidence to support the fact findings, and that therefore, the conclusion of law based upon such findings was in error.

The court of appeals rendered judgment for the Mullises based on the jury verdict. Although there was no jury finding on the character of the culvert, the court of appeals held that the culvert had impliedly been found to be a fixture be-

cause the omitted issue was referable to the jury finding of damages in favor of the Mullises.

Tex.R.Civ.P. 279 provides "... such omitted issue or issues shall be deemed or found by the court in such a manner as to *support the judgment.*" (Emphasis added.) Tex.R.Civ.P. 301 provides that there will be only one final judgment. Once the first judgment (in the Mullises' favor) was set aside, the cause stood precisely as if there had been no judgment. Thus, the later judgment (in Logan's favor) must be viewed as the only judgment rendered in the case. *Sampson v. Scott*, 318 S.W.2d 22 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n.r.e.). The court of appeals incorrectly applied Rule 279 to the jury findings rather than the judgment. However, since the culvert was a fixture as a matter of law, the issue was properly excluded from jury consideration. *Ewing v. Wm. L. Foley, Inc.*, 115 Tex. 222, 280 S.W. 499, 503 (1926). The court of appeals was therefore correct in rendering judgment for the Mullises.

We affirm the judgment of the court of appeals.

Dissenting opinion by KILGARLIN, J., joined by RAY, J.

KILGARLIN, Justice, dissenting.

Because the determinative legal question discussed in the majority opinion was not briefed or argued by the parties either before this court or the court of appeals, I respectfully dissent.

A basis for understanding the error made by the majority of the court lies in the case's procedural history. The Mullises brought suit for damages they incurred due to Logan's destruction of the culvert. The jury answered damage issues in favor of the Mullises, but did not answer liability issues since none were submitted to the jury. The trial court initially rendered judgment in favor of the Mullises. Following several motions by Logan, including motions for new trial, a motion for judgment n.o.v. and motions to vacate the judgment, the trial court set aside the first

judgment and rendered a second judgment for Logan. The trial court substituted this second judgment within the time period that it had plenary power.

The court of appeals reversed, holding that liability was a deemed finding under Tex.R.Civ.P. 279 as consistent with the trial court's first judgment. It held that the trial court had no power to vacate the first judgment, even though the trial court had plenary power. Written findings made by the trial judge to support the second judgment were likewise held to be improper under the theory that Rule 279 requires such findings to be made by the trial court prior to judgment. The court of appeals interpreted the word "judgment" in Rule 279 to mean the first initial judgment, not the final judgment rendered by the trial court. Throughout its opinion the court of appeals treated the question before it as a deemed fact finding under Rule 279. Writ of error was granted by this court solely on the issue of whether or not the court of appeals' procedural analysis was correct.

Today the majority decides that Logan's culvert was permanently attached to the realty as a *matter of law* (emphasis added). Although I do not quarrel with the majority's conclusion, I do dispute their procedural power to reach such a question. Neither Logan nor the Mullises briefed or argued this legal question to the court of appeals. There is nothing in the court of appeals opinion remotely suggesting that this issue was before that court. Neither party argued or briefed this question in this court.

Indeed, the Mullises, receivers of the majority's benevolence, argued both before us and the court of appeals that determination of the culvert's character was a question of fact. It should be noted that the Mullises did attack in the court of appeals the second trial court judgment on the grounds that there was no evidence to support the court's fact findings. However, the Mullises did not ask the court of appeals or this court to find as a matter of law that the culvert is a fixture. Moreover, their only no evidence argument remotely contending the culvert was a fixture was one directed

toward Logan's intent, which, as the majority observes, is but one of three necessary factors. Thus, the Mullises prevail on an argument never made. The irony of the majority's reasoning is underscored by the fact that the Mullises proceeded under assumptions opposite to the majority's conclusion.

The law in Texas is clear that grounds of error not asserted by points of error or argument before the appellate courts are waived. *Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 452–53 (Tex.1978). Points not argued or briefed are questions that the court of appeals has no power or authority to decide. *Bickler v. Bickler*, 403 S.W.2d 354, 361 (Tex.1966). Accordingly, this court has jurisdiction only over those issues that are properly before it. *Wisdom v. Smith*, 146 Tex. 420, 209 S.W.2d 164, 166 (Tex.1948). A question of law not argued by either party and not found in the court of appeals opinion is outside this court's power and authority to decide legal questions.

These procedural rules not only incorporate basic jurisdictional concepts but also provide important constitutional safeguards. Due process assures not only an opportunity to present one's position but also an opportunity to respond to issues raised by one's opponent. When a case is decided on an issue never raised or anticipated, that opportunity is denied. Justice Frankfurter once noted that "the history of liberty has largely been the history of observing procedural safeguards." *McNabb v. U.S.*, 318 U.S. 332, 347, 63 S.Ct. 608, 616, 87 L.Ed. 819 (1943). Because I would decide the case only on the issues properly before the court, I dissent.

RAY, J., joins in this dissenting opinion.