TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00194-CV







Pauline White, Individually and as Personal Representative of the Heirs


and Estate of Charles Norman White, Deceased, Appellant



v.



CBS Corporation f/k/a Westinghouse Electric Corporation, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 92-10123-A, HONORABLE PETER M. LOWRY, JUDGE PRESIDING








 Pauline White, individually and as representative of the estate of Charles Norman
White, appeals from a summary judgment that she take nothing by her actions against
Westinghouse Electric Corporation. We will reverse the judgment and remand the cause to the
trial court.


THE CONTROVERSY


 Charles Norman White contracted cancer (mesothelioma). In 1992, he and his wife 
Pauline White sued Westinghouse and twenty-one other manufacturers and suppliers of asbestos
and products requiring the use of asbestos. The Whites alleged asbestos caused the cancer and that
the defendants were jointly and severally liable for the Whites' injuries on causes of action for
negligence, gross negligence, strict liability arising from a dangerous product, and conspiracy. 
Charles Norman White died in 1993, and Pauline White (1) appeared in the cause thereafter as
representative of his estate. The actions against Westinghouse were based on Mr. White's alleged
exposure to asbestos in the course of his work on and around industrial turbines that Westinghouse
designed, manufactured, and installed for Mr. White's employer, the City of Austin.

 Westinghouse moved in October 1993 for a "Partial Summary Judgment" based on
the bar of the ten-year statute of repose found in section 16.009 of the Texas Civil Practice and 
Remedies Code. Tex. Civ. Prac. & Rem. Code § 16.009 (West 1986). The trial court granted
the motion in 1994 and ultimately determined in a 1998 summary judgment that White take
nothing by her actions against Westinghouse. White appeals from the 1998 summary judgment.


APPELLATE JURISDICTION


 Westinghouse contends we must dismiss White's appeal for want of a timely notice
of appeal. The following events transpired in the trial court after Westinghouse filed on October
8, 1993, its motion for partial summary judgment:

 On February 24, 1994, the trial judge signed an "Order Granting Partial Summary
Judgment," reciting that Westinghouse's motion had been heard, that it "should be granted," and


 It is therefore ordered that the Motion for Partial Summary Judgment filed by
Defendant, Westinghouse Electric Corporation, be and is hereby granted.



The order contains no decretal language.

 On May 2, 1994, the trial judge signed an "Agreed Order for Severance of
Plaintiff's Claims Against Westinghouse Electric Corporation." The order was filed the day it was
signed, and states as follows:


It is therefore ordered, adjudged and decreed that all claims against Westinghouse
should be severed from claims against all other Defendants and from all other cases
consolidated with Plaintiff's case for trial on May 9, 1994, and trial of such claims
against Westinghouse should be continued. It is further ordered that such case is
severed and the clerk is ordered to place in the new file (Cause No. 92-10123A)
a copy of the most recent petition as well as copies of Westinghouse's Motion for
Summary Judgment [sic] and all responses related thereto. 



(emphasis added). More than three years later, on February 19, 1998, Westinghouse filed a
"Motion for Summary Judgment" stating as follows:


On February 24, 1994, [the court] granted summary judgment to Westinghouse
based on the Texas Statute of Repose. This extinguished Plaintiff's claims relating
to her decedent's exposure to Westinghouse's turbine-generators. . . . Plaintiff's
last mandatory discovery filings indicate that there are no claims of any other type
of exposure against Westinghouse. Therefore, there remain no genuine issues of
material fact and Westinghouse is entitled to summary judgment on all claims.



The trial court sustained the foregoing motion in an "Order Granting Summary Judgment," signed
by the trial judge on March 12, 1998. The order states as follows:


Came on to be heard on the 12th day of March, 1998, [Westinghouse's] Motion for
Summary Judgment on all issues. The Court, having considered the Motion, the
evidence [sic] before the Court, and arguments of counsel, is of the opinion that
there is no genuine issue as to any material fact and said Motion should be granted. 
It is, therefore Ordered that all of Plaintiff's claims against [Westinghouse] are
dismissed with prejudice [sic], with costs incurred in the defense of this matter to
be taxed against Plaintiff.

White filed notice of appeal on April 10, 1998.

 Westinghouse contends the summary judgment order signed February 24, 1994,
was a judgment that disposed of all claims against Westinghouse, and it became final and
appealable on May 24, 1994, with the filing of the agreed order severing White's claims against
Westinghouse from her claims against the other defendants. See IPM Prods. Corp. v. Motor
Parkway Realty Corp., 960 S.W.2d 879, 882 (Tex. App.--El Paso 1997, no writ); 5 McDonald
Texas Civil Practice § 27.8, at 21 (1992 ed.). Consequently, White's notice of appeal, filed
almost four years after the 1994 judgment became final and appealable, was too late to perfect her
appeal.

 We conclude the order signed February 24, 1994, was not a final judgment made 
appealable by the subsequent order of severance.

 No presumption of finality attaches to a summary judgment. The imputation of
finality depends on the trial judge's intention, drawn from the language of the order in question,
the record as a whole, and, where pertinent, the parties' conduct. See Continental Airlines, Inc.
v. Kiefer, 920 S.W.2d 274, 277 (Tex. 1966). The order signed February 24, 1994, does not, of
course, imply a severance of any kind. See Pan Am. Petroleum Corp. v. Texas Pac. Coal & Oil
Co., 324 S.W.2d 200 (Tex. 1959). The order does not purport to declare the legal effect of
granting Westinghouse's motion, as by ordering that White take nothing by her causes of action
against Westinghouse. See Rosedale Partners, Ltd. v. 131st Judicial Dist. Court, 869 S.W.2d
643, 646-48 (Tex. App.--San Antonio 1994, no writ); Harper v. Welchem, Inc., 799 S.W.2d 492,
493-96 (Tex. App.--Houston [14th Dist.] 1990, no writ); Chandler v. Reder, 635 S.W.2d 895,
897-97 (Tex. App.--Amarillo 1982, no writ); 5 McDonald, supra, § 27.24. 

 The agreed severance order filed May 2, 1994, dispels any belief that the preceding
summary judgment order was intended to be a final judgment that awaited only a severance to
become appealable:  the severance order directs a continuance of White's actions against
Westinghouse, thus rejecting explicitly any idea that those actions had been finally adjudicated in
the partial summary judgment signed February 24, 1994. And after the severance was ordered,
Westinghouse itself moved for summary judgment on the entire case against it, which action on
its part demonstrates objectively that the 1994 judgment was not understood to be a final
adjudication. This second of the Westinghouse motions for summary judgment resulted in the
summary judgment order signed March 12, 1998.

 While the March 12, 1998, order is also defective, because it purports to dismiss
in lieu of adjudicating White's causes of action against Westinghouse, we believe the trial court's
intention is sufficiently clear from the language employed in the order (dismissal "with prejudice")
and the record as a whole. We construe the order to mean that White shall take nothing by her
actions against Westinghouse.

 For the foregoing reasons, we hold the summary-judgment order signed February
24, 1994, was not a final and appealable judgment, but the order signed March 12, 1998, was such
a judgment. White's notice of appeal was therefore timely. We overrule Westinghouse's
contention that we must dismiss White's appeal for want of jurisdiction.


THE STATUTE OF REPOSE


 The parties dispute the proper interpretation and application of section 16.009. The
statute provides as follows:


(a)  A claimant must bring suit for damages for a claim listed in Subsection (b)
against a person who constructs or repairs an improvement to real property not
later than 10 years after the substantial completion of the improvement in an action
arising out of a defective or unsafe condition of the real property or deficiency in
the construction or repair of the improvement.


(b)  This section applies to suits for . . . (2) personal injury; (3) wrongful death;
(4) contribution; or (5) indemnity.



Tex. Civ. Prac. & Rem. Code § 16.009 (West 1986).

 The following are reasonable inferences from the deposition transcripts, affidavits,
and other parts of the summary judgment record:  Mr. White was exposed to asbestos in the
course of his work at the Seaholm and Holly Street power plants between 1952 and 1974 when he
was employed as a maintenance worker at the two plants. He came to the Seaholm plant in 1952. 
At that time, Westinghouse had already installed one turbine in the Seaholm plant. Over the
succeeding years Westinghouse installed four other turbines at approximately two- or three-year
intervals. Concerning the four turbines installed after 1952, Mr. White helped "on installing the
turbines and [performed] general work around the turbines when they were being installed." 
During installation of the four turbines, pipes associated with the turbines would receive insulation
and insulation would be placed inside the turbines themselves. The insulation material included
asbestos products. Westinghouse had "completely installed" all five turbines by the time Mr.
White left the Seaholm plant in 1962 to work at the Holly Street plant. When he arrived at the
latter plant, Westinghouse had already installed there one turbine. The company installed two
others while Mr. White worked at the plant. The three turbines were overhauled nine times during
Mr. White's employment at the Holly Street plant. He would check the turbines during his
"watch" to see "if there was anything in any danger or anything or open fuel cans and stuff like
that." He did not, however, work directly on the installation and overhaul of the Holly Street
turbines. 

 For purposes of our review of the summary judgment, we must assume the truth
of the foregoing, viewing the record in a light most favorable to White, indulging for her benefit
every reasonable inference, and resolving all doubts in her favor. Lear Siegler, Inc. v. Perez, 819
S.W.2d 470, 471 (Tex. 1991); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49
(Tex. 1985).

 The following, however, appear uncontroverted:  Westinghouse designed,
manufactured, and installed the turbines using asbestos material; the turbines each weighed
between 250,000 and 850,000 pounds and were thirty to eighty feet in length; and the turbines
were installed on pilings driven deep into the earth where they rested on special concrete
foundations. See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d
41, 47 (Tex. 1965).

 The effect of the summary judgment is to determine as a matter of law that any
injury sustained by Mr. White is barred by section 16.009 because the asbestos had been
incorporated, at the time of his exposure, into an improvement on real property constructed or
repaired by Westinghouse. We believe the summary judgment record will not support this
conclusion as a matter of law.

 It is not contended that the turbines were trade fixtures; it is obvious that they were,
before their installation, chattels. They lost that character, however, and eventually became
improvements upon their annexation to the realty comprising the Seaholm and Holly Street power
plants. In this connection, the word "annexation" means a joinder or uniting of a chattel with
realty for a specific purpose--here use of the turbines to generate electricity--coupled with the
owner's intent to enhance the freehold by the improvement. The owner's intent in a particular
case is inferrable from the surrounding circumstances, including such objective manifestations as
the mode and sufficiency of the annexation, either real or constructive, and the adaptation of the
chattel to the use or purpose of the realty. As a general rule, the owner's intent is a question of
fact for the trier of fact, but it becomes a question of law where reasonable minds could not differ
on the issue of intent. See Sonnier v. Chisholm-Ryder Co., Inc., 909 S.W.2d 475, 478-82 (Tex.
1995); Logan v. Mullis, 686 S.W.2d 605, 607 (Tex. 1985).

 It is easily inferrable from the summary judgment record, under the rules applicable
to summary judgment review, that Westinghouse indeed constructed an improvement--the turbines
incorporating the asbestos materials--at the Seaholm and Holly Street plants. The facts
surrounding installation of the turbines--their adaptation to the use or purpose of the two plants,
their size and the mode and sufficiency of their joinder or annexation to the realty--evidence the
City's intent to effect an improvement as a matter of law. (2) That is not the end of the matter,
however. The question of timing gives rise to a genuine issue of material fact precluding summary
judgment.

 "There can be no such thing as an improvement until personalty is annexed to
realty." Sonnier, 909 S.W.2d at 481 (emphasis added). Under the summary judgment record,
parts of which are summarized above, we may not say as a matter of law that Mr. White's only
exposure occurred after the asbestos had been incorporated into the turbines and annexed to the
realty so as to constitute an improvement. As indicated above, the record includes statements that
Mr. White helped install four of the five turbines at the Seaholm plant, and worked around two
turbines while they were being installed at the Holly Street plant. Nothing in the record suggests
that the City intended that the turbines be "joined" or "annexed" to the realty, in a constructive
sense, before being installed; and the record suggests affirmatively, by the very fact that the
turbines were not installed until after Mr. White came to work at the two plants, that they had not
been actually annexed before his exposure. (We refer, of course, to only four of the five turbines
at the Seaholm plant and two of the three turbines at the Holly Street plant).

 Because the summary judgment "evidence" suggests that Mr. White's alleged
exposure to the asbestos occurred when the asbestos was yet a chattel or contained within a chattel,
and thus before section 16.009 had been activated, it cannot be said that White's actions are barred
by the statute as a matter of law. See Willis v. Raymark Indus., Inc., 905 F.2d 793, 797-98 (4th
Cir. 1990). We hold accordingly.

 In view of our holding as to White's first assignment of error, we need not consider
her remaining assignments of error.

 We reverse the summary judgment and remand the cause to the trial court.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Reversed and Remanded

Filed: June 30, 1999

Publish











* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. We shall refer hereafter to Pauline White as "White" and to Charles Norman White as "Mr.
White."
2. Cf. Logan v. Mullis, 686 S.W.2d 605 (Tex. 1985). In Logan, the landowner constructed a
culvert beneath a road by removing the ends of a railroad tank car and placing the altered car in
a creek bed. To secure the car, he packed around it with soil, "cement," and wood pilings while
protecting the whole with a retaining wall. Several large winch trucks were required to remove
the car when the culvert was demolished. The court held the culvert had been annexed to the
realty as a matter of law inferred from these objective manifestations of the owner's intent to effect
an improvement. See Logan, 686 S.W.2d at 608.



 installation of the turbines--their adaptation to the use or purpose of the two plants,
their size and the mode and sufficiency of their joinder or annexation to the realty--evidence the
City's intent to effect an improvement as a matter of law. (2) That is not the end of the matter,
however. The question of timing gives rise to a genuine issue of material fact precluding summary
judgment.

 "There can be no such thing as an improvement until personalty is annexed to
realty." Sonnier, 909 S.W.2d at 481 (emphasis added). Under the summary judgment record,
parts of which are summarized above, we may not say as a matter of law that Mr. White's only
exposure occurred after the asbestos had been incorporated into the turbines and annexed to the
realty so as to constitute an improvement. As indicated above, the record includes statements that
Mr. White helped install four of the five turbines at the Seaholm plant, and worked around two
turbines while they were being installed at the Holly Street plant. Nothing in the record suggests
that the City intended that the turbines be "joined" or "annexed" to the realty, in a constructive
sense, before being installed; and the record suggests affirmatively, by the very fact that the
turbines were not installed until after Mr. White came to work at the two plants, that they had not
been actually annexed before his exposure. (We refer, of course, to only four of the five turbines
at the Seaholm plant and two of the three turbines at the Holly Street plant).

 Because the summary judgment "evidence" suggests that Mr. White's alleged
exposure to the asbestos occurred when the asbestos was yet a chattel or contained within a chattel,
and thus before section 16.009 had been activated, it cannot be said that White's actions are barred
by the statute as a matter of law. See Willis v. Raymark Indus., Inc., 905 F.2d 793, 797-98 (4th
Cir. 1990). We hold accordingly.