

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00368-CV

———————————————

LAMAR ADVANTAGE OUTDOOR COMPANY, L.P., Appellant

V.

TEXAS DEPARTMENT OF TRANSPORTATION, Appellee

---

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-293180-17

---

Before Gabriel, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Lamar Advantage Outdoor Company, L.P., the owner of a billboard, filed suit seeking a declaratory judgment against appellee Texas Department of Transportation (TxDOT) to void a highway construction project due to TxDOT's failure to prepare a Takings Impact Assessment (TIA) pursuant to the Private Real Property Rights Preservation Act (Act). *See* Tex. Gov't Code Ann. § 2007.044(a). In response, TxDOT filed a plea to the jurisdiction contending that its actions were exempt under the Act, Lamar could not prove damage under the Act, and Lamar lacked standing under the Act. The trial court granted TxDOT's plea to the jurisdiction, and Lamar brought this appeal. Because Lamar does not have standing to challenge the failure to prepare a TIA, we affirm the trial court's judgment.

## II. BACKGROUND

In February 2015, the Texas Transportation Commission, which governs TxDOT,[1] approved funding for the Interstate 30/State Highway 360 Interchange Project (Project). The Project involves transforming the current cloverleaf design into a fully directional interchange with connection ramps for all movements between I-30 and SH 360. Lamar contends that, to facilitate the Project, TxDOT, through the

---

[1]Tex. Transp. Code Ann. § 201.201.

actions of the Commission, "adopted or issued resolutions, policies, guidelines or similar measures that authorized, facilitated, and approve[d] the Project."

Lamar owns a billboard located along the north side of I-30, 0.3 miles west of SH 360. The billboard was erected in 1991 pursuant to a permit obtained from the City of Arlington by a Lamar predecessor-in-interest. While Lamar has a lease that allows it to operate the sign, it is not the owner of the land on which the structure is located. According to Lamar's petition, when support beams for the Project were erected blocking the billboard, it had to cancel and refund contracts for the use of the sign structure. Although Lamar contends that "actions taken by contractors that TxDOT approved for the Project have imposed a physical invasion or required a dedication or exaction of private real property outside of the formal exercise of the power of eminent domain," it does not allege any effect on the billboard other than the support-beam blockage.

In July 2017, Lamar sued TxDOT under Section 2007.044 of the Act for a declaration that the Project was invalid for failure to prepare a TIA.[2] Tex. Gov't Code Ann. § 2007.044. In addition, it sought to recover attorney's fees and court costs.

In response, TxDOT filed a general denial and a plea to the jurisdiction. The plea contended that the trial court lacked jurisdiction because TxDOT's actions were

---

[2]TxDOT does not dispute that "there are no [TIAs] for the [P]roject and the area." In its response to requests for admissions, TxDOT also admitted that it did not prepare a TIA for the Project.

exempt under the Act, Lamar had not pled and could not prove compensable damage under the Act, and Lamar lacked standing under the Act. After a hearing on the plea, the trial court granted the plea and dismissed the case for lack of jurisdiction. The trial court filed findings of fact and conclusions of law. This appeal followed.

### III. DISCUSSION

In one issue challenging the trial court's granting of the plea to the jurisdiction, Lamar contends that it pled sufficient facts and presented evidence establishing the trial court's jurisdiction over Lamar's claims that TxDOT failed to fulfill its statutory duty under the Act. TxDOT responds that Lamar lacks standing to bring a claim under the Act, and the Act does not require a TIA.

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The claims asserted may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. *Id.* Whether a court has subject matter jurisdiction is a legal question. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A trial court's ruling on a plea to the jurisdiction is reviewed de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015).

**B. Applicable Law**

The Act allows private real-property owners to sue political subdivisions for certain governmental actions that require compensation under the Fifth or Fourteenth Amendments to the United States Constitution or Article I, Sections 17 or 19 of the Texas Constitution. *Hallco Tex., Inc. v. McMullen Cty.*, 221 S.W.3d 50, 61 (Tex. 2006) (citing Tex. Gov't Code Ann. § 2007.021). The Act creates two causes of action in favor of real-property owners: (1) a statutory cause of action for taking; and (2) a cause of action based on governmental action taken without preparing a TIA, when the Act requires a TIA. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734–35 (Tex. 2002) (citing Tex. Gov't Code Ann. §§ 2007.021, .044). The Act applies to "governmental entities"[3] whose actions are generally subject to the requirements of the Act unless an exception to the Act's coverage applies. Tex. Gov't Code Ann. §§ 2007.002(1)(B), .003(b)–(e).

> The Act applies only to certain governmental actions:
>
> (1) the adoption or issuance of an ordinance, rule, regulatory requirement, resolution, policy, guideline, or similar measure;
>
> (2) an action that imposes a physical invasion or requires a dedication or exaction of private real property;
>
> (3) an action by a municipality that has effect in the extraterritorial jurisdiction of the municipality, excluding annexation, and that enacts or enforces an ordinance, rule, regulation, or plan that does not impose

---

[3]In its response to requests for admissions, TxDOT admitted that it is a "governmental entity as defined by Chapter 2007.002(1) of the Government Code."

identical requirements or restrictions in the entire extraterritorial jurisdiction of the municipality; and

(4) enforcement of a governmental action listed in Subdivisions (1) through (3), whether the enforcement of the governmental action is accomplished through the use of permitting, citations, orders, judicial or quasi-judicial proceedings, or other similar means.

*Id.* § 2007.003(a). There are numerous exemptions to the Act's applicability, including the following "governmental actions":

(4) an action, including an action of a political subdivision, that is reasonably taken to fulfill an obligation mandated by federal law or an action of a political subdivision that is reasonably taken to fulfill an obligation mandated by state law; [or]

. . . .

(8) a formal exercise of the power of eminent domain[.]

*Id.* §§ 2007.003(b)(4), (8).

If the Act applies to a particular action, the governmental entity is required to prepare a TIA, which must

(1) describe the specific purpose of the proposed action and identify:

(A) whether and how the proposed action substantially advances its stated purpose; and

(B) the burdens imposed on private real property and the benefits to society resulting from the proposed use of private real property;

(2) determine whether engaging in the proposed governmental action will constitute a taking; and

(3) describe reasonable alternative actions that could accomplish the specified purpose and compare, evaluate, and explain:

6

(A) how an alternative action would further the specified purpose; and

(B) whether an alternative action would constitute a taking.

*Id.* § 2007.043(b).

If a governmental entity is required to prepare a TIA and fails to do so, sovereign immunity to suit and liability under the Act is waived "to the extent of liability created by [the Act]." *Id.* § 2007.004(a). A governmental action requiring a TIA is void if the TIA is not prepared, and a "private real property owner affected by a governmental action taken without the preparation of a [TIA]" may bring suit for a declaration of the invalidity of the governmental action. *Id.* § 2007.044(a).

## C. Application of Law to Facts

We begin by addressing Lamar's standing. Standing is a necessary component of subject-matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). To satisfy the test for standing, there must be a real controversy between the parties, and the controversy must be actually determined by the judicial declaration sought. *Id.* at 446. The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). "A court has no jurisdiction over a claim made by a plaintiff without standing to assert it." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). Standing is properly

7

raised in a plea to the jurisdiction. *City of Houston v. Guthrie*, 332 S.W.3d 578, 588 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). It is a question of law. *Brunson v. Woolsey*, 63 S.W.3d 583, 587 (Tex. App.—Fort Worth 2001, no pet.).

Here, Lamar brought suit under Section 2007.044 of the Act, which allows a "private real property owner affected by a governmental action taken without the preparation of a [TIA]" to "bring suit for a declaration of the invalidity of the governmental action." Tex. Gov't Code Ann. § 2007.044. Because Lamar is only a lessee, TxDOT contends that Lamar does not own any "private real property" that is "affected" by TxDOT's actions; therefore, Lamar lacks statutory standing regardless of whether a TIA was required. We agree.

To have standing to bring a claim under the Act, plaintiffs must be "owners" who allege a "taking." *Guthrie*, 332 S.W.3d at 588. The Act defines "owner" as "a person with legal or equitable title to affected private real property at the time a taking occurs." Tex. Gov't Code Ann. § 2007.002(2). "Private real property" means "an interest in real property recognized by common law, including a groundwater or surface water right of any kind, that is not owned by the federal government, this state, or a political subdivision of this state." *Id.* § 2007.002(4). "Taking" means

> (A) a governmental action that affects private real property, in whole or in part or temporarily or permanently, in a manner that requires the governmental entity to compensate the private real property owner as provided by the Fifth and Fourteenth Amendments to the United States Constitution or Section 17 or 19, Article I, Texas Constitution; or
>
> (B) a governmental action that:

8

(i) affects an owner's private real property that is the subject of the governmental action, in whole or in part or temporarily or permanently, in a manner that restricts or limits the owner's right to the property that would otherwise exist in the absence of the governmental action; and

(ii) is the producing cause of a reduction of at least 25 percent in the market value of the affected private real property, determined by comparing the market value of the property as if the governmental action is not in effect and the market value of the property determined as if the governmental action is in effect.

*Id.* § 2007.002(5).

Lamar acknowledges that it does not own any land impacted by the Project.[4] Instead, Lamar alleges that "its ownership of a real property fixture gives [it] standing as a private real property owner under the Act." TxDOT responds that neither Lamar's leasehold interest nor ownership of a "real property fixture" gives it standing under the Act.

Lamar's leasehold interest is not real property subject to the Act. *See Guthrie*, 332 S.W.3d at 588. In *Guthrie*, the fireworks operators were only lessees of the building used to sell fireworks, with actual title to the land being held by the property owners. *Id.* The fireworks operators argued that they had standing to sue under the Act because their leasehold interest gave them sufficient interest in the real property to assert a claim under the Act. *Id.* The court disagreed, holding that the Act's use of

---

[4]In response to an interrogatory, Lamar stated that it "is not claiming that its real property interests have been physically invaded or exacted, but Lamar believes other property was physically invaded or exacted by TxDOT for the Project."

9

the term "title" in the definition of "owner" indicates title to a real property interest—whether surface, water, mineral, or some combination thereof—must be held before a party has standing to sue under the Act. *Id.* The fireworks operators also argued that a leasehold interest is the equivalent of having "equitable title" in real property. *Id.* The court again disagreed, holding that "'[e]quitable title' is a right, enforceable in equity, to have the legal title to real estate transferred to the owner of the right upon performance of specified conditions." *Id.*

Similar to the fireworks operators in *Guthrie*, Lamar has only a leasehold interest in the real property on which the billboard is located. However, Lamar argues that *Guthrie* is distinguishable because Lamar owns the billboard, which it states is a real property fixture. *See State v. Clear Channel Outdoor, Inc.*, 463 S.W.3d 488, 495–96 (Tex. 2015); *State v. Moore Outdoor Props., L.P.*, 416 S.W.3d 237, 243–45 (Tex. App.—El Paso 2013, pet. denied). Citing *Clear Channel*, Lamar contends that its sign structure qualifies as "private real property" under the Act because it is "an interest in real property recognized by common law," and as such, Lamar is an "owner" under the Act. *See* Tex. Gov't Code Ann. §§ 2007.002(2), (4).

In *Clear Channel*, which involved claims not arising under the Act, the parties disputed the compensation due for condemnation of land with free-standing billboards used for outdoor advertising. 463 S.W.3d at 490. Clear Channel alleged that because of the condemnation of the underlying land, "[a]t the State's direction, Clear Channel [the owner of the billboards] dismantled the signboards, cut the poles

10

into pieces, and removed the materials from the property." *Id.* Centering its argument on *Logan v. Mullis*, 686 S.W.2d 605 (Tex. 1985),[5] the State argued that the billboards were not fixtures but personalty and could have been removed. *Clear Channel*, 463 S.W.3d at 493. Disagreeing, the Texas Supreme Court determined that the billboard structures at issue in that case were fixtures that should have been valued as part of the land. *Id.* at 496. However, the court noted that "[t]his is not to say that all sign structures are necessarily fixtures." *Id.* Rather, courts are "to determine whether any particular billboard is a fixture . . . based on the *Logan* test as framed from the perspective of a holder of the unified fee." *Id.*

Once it determined that the billboard structures were fixtures, the court next looked at what compensation was due for the sign structures. *Id.* Despite Clear Channel's argument that the value of the billboards should be based on the profits generated by their use in advertising, the court held that "while the advertising business income generated by a billboard should be reflected in the valuation of the

---

[5]In *Logan*, the Texas Supreme Court stated,

> Three factors are relevant in determining whether personalty has become a fixture, that is, a permanent part of the realty to which it is affixed: (1) the mode and sufficiency of annexation, either real or constructive; (2) the adaptation of the article to the use or purpose of the realty; and (3) the intention of the party who annexed the chattel to the realty.

686 S.W.2d at 607.

land at its highest and best use, the loss of the business is not compensable and cannot be used to determine the value of the billboard structure." *Id.* at 490.

*Clear Channel* is not dispositive because unlike in *Clear Channel*, the land on which Lamar's billboard sits was not taken, and the billboard was not dismantled and removed from the property. Here, Lamar still has both its leasehold interest and the billboard. While Lamar explains in its reply brief that it cannot seek relief under an inverse condemnation or eminent domain cause of action, that fact alone does not give it standing to proceed under the Act. That is because, even if the billboard is a "fixture," which is a determination we do not make here, Lamar cannot show it was "affected" by a governmental action. Tex. Gov't Code Ann. § 2007.044.

As set out above, the definition of "owner" connects the word "affected" to a "taking" under the Act. *Id.* § 2007.002(2). To have a taking, there must be a constitutional taking, *see id.* § 2007.002(5)(A), or a governmental action that affects an owner's private real property in whole or in part or restricts or limits the owner's right to the property that otherwise exists *and* is the producing cause of a reduction of at least 25% in the market value of the property. *Id.* § 2007.002(5)(B); *see also Gillium v. Santa Fe Indep. School Dist.*, No. 01-10-00351-CV, 2011 WL 1938476, at *4 (Tex. App.—Houston [1st Dist.] May 12, 2011, no pet.) (mem. op.) (stating that the Act waives immunity for "governmental actions" alleged to have caused (1) a

12

constitutional taking or (2) a reduction of at least 25% in the market value of the affected private real property).[6]

Even though Lamar contends that it lost business as a result of the decreased visibility of its billboard, loss of visibility is not compensable. *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex. 1993). "Just as a landowner has no vested interest in the volume or route of passersby, he has no right to insist that his premises be visible to them." *Id.* Where a billboard is a fixture to be valued with the land, the fact that the billboard could generate advertising business income should be reflected in the total valuation of the land on which the fixture is located at its highest and best use. *See Clear Channel*, 463 S.W.3d at 497 (quoting *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 874 (Tex. 2009): "'[E]vidence of valuation based on advertising income' is inadmissible, while '[g]eneral estimates of what the property would sell for considering its possible use as a billboard site are acceptable.'"). The loss of the business itself is not compensable to the fixture owner and cannot be used to

---

[6]In its reply brief, Lamar complains that TxDOT's arguments "fail to distinguish the Act's definition of a 'taking' from the common law definition of 'taking.'" Contending that the Act "was made precisely for the scenario in which [it] finds itself," Lamar states that it cannot seek relief under inverse condemnation laws or through Chapter 21 of the Property Code "because the government's action in this regard would not constitute a 'taking' under common law, even though the government's action affected the 'market value' of Lamar's property." We must presume the legislature was aware of the common law when it passed the Act. *See Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999). Lamar's argument also ignores the fact that the definition of "private real property" in the Act incorporates common law. Tex. Gov't Code Ann. § 2007.002(4) ("'Private real property' means an interest in real property recognized by common law . . . .").

determine the market value of the billboard structure. *Id.* at 490. The fixture owner is entitled to compensation only for the physical structure itself. *Id.* at 498. As such, Lamar has not pleaded any facts that can show it has sustained the 25% reduction in market value that is required by the Act.

To allege a cause of action under the Act, a plaintiff must be a "private real property owner affected by a governmental action." Tex. Gov't Code Ann. § 2007.004. Because Lamar holds only a leasehold interest in a billboard located on real property where neither the land on which the billboard sits nor the billboard itself was taken for the Project, it does not have standing to bring a claim under the Act. We overrule Lamar's issue.

## IV. CONCLUSION

Having overruled Lamar's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: September 24, 2020

14